UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| HAMILTON COUNTY EMERGENCY COMMUNICATIONS DISTRICT, <br><br> Plaintiff, <br><br> v. <br><br> ORBACOM COMMUNICATIONS INTEGRATOR CORPORATION, ORBACOM SYSTEMS, INC., OCI LIQUIDATING LLC, IPC INFORMATION SYSTEMS HOLDING, INC., HERBERT COHEN, and RONALD NEWFIELD, <br><br> Defendants. | No. 1:04-CV-7 <br><br> Judge Curtis L. Collier |

## **M E M O R A N D U M**

Before the Court is a motion to dismiss filed by Defendants Herbert Cohen and Ronald Newfield (collectively "Defendants") pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction (Court File No. 80). Defendants filed a memorandum in support of their motion (Court File No. 81), Plaintiff Hamilton County Emergency Communications District (the "District") filed a response (Court File No. 90), and Defendants filed a reply (Court File No. 92). Additionally, the District filed a motion to file a supplemental brief (Court File No. 97) which the Defendants have opposed as violative of ED Tenn. LR 7.1(d) (Court File No. 103). Because the District's proposed supplemental brief does not call to the Court's attention any new developments but rather seeks to address "incorrect assertions" in Defendants' reply brief, the Court will **DENY** the District's motion to file a supplemental brief (Court File No. 97). For the following reasons, the Court will **DENY** Defendants' motion to dismiss (Court File No. 80).

I.  **STANDARD OF REVIEW**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) requires the Court to determine whether the plaintiff has alleged sufficient facts to support the exercise of personal jurisdiction over the defendant. In ruling upon a Rule 12(b)(2) motion, the Court has three procedural alternatives: (1) the Court may determine the motion on the basis of written submissions and affidavits alone; (2) it may permit discovery in aid of the motion; and/or (3) it may conduct an evidentiary hearing on the merits of the motion. *See Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989). In this case, some limited discovery has already been conducted and the Court will decide the matter based upon the briefs, affidavits, and other evidence submitted by the parties.

The plaintiff always bears the burden of establishing personal jurisdiction, but the weight of that burden depends upon the manner in which the Court elects to proceed. *Id.* Where, as here, the Court elects to rule without an evidentiary hearing, the plaintiff's burden is lightened considerably. In such a case, the plaintiff need only present a *prima facie* case for jurisdiction. *Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 478 (6th Cir. 2003); *Kerry Steel v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997); *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., Ltd.*, 91 F.3d 790, 792 (6th Cir. 1996). As with a Rule 12(b)(6) motion, the Court should consider the pleadings and affidavits in the light most favorable to the plaintiff, however, "the plaintiff may not rest on his pleadings to answer the movant's affidavits, but must set forth, 'by affidavit or otherwise, . . . specific facts showing that the court has jurisdiction.'" *Serras*, 875 F.2d at 1214 (quoting *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir. 1974)); *see also Nationwide*, 91 F.3d at 792. Thus, as long as the plaintiff is able to "demonstrate facts which support a finding of jurisdiction," the

2

motion to dismiss should be denied, even in the face of controverting evidence presented by the moving party. *Serras*, 875 F.2d at 1214; *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988).

## II.     RELEVANT FACTS

The District is a public Tennessee corporation charged with the statutory responsibility for creating and managing the emergency communications system for Hamilton County, Tennessee (Court File No. 78, ¶ 3). According to the District's pleadings, in the spring of 2002 it entered into a contract with Defendant Orbacom Communications Integrator Corporation ("OCI"), a New Jersey corporation, pursuant to which OCI was to provide the District with certain upgraded computer hardware and software (*id.* ¶¶ 2, 5-6, 8-10). On December 12, 2003, the District filed suit against OCI in Hamilton County Chancery Court asserting claims for injunctive relief, recovery of funds, and breach of contract (Court File No. 1, Complaint). On January 9, 2004, OCI removed the case to federal court on the basis of the diversity of citizenship between the parties (Court File No. 1, Notice of Removal).

Through two amended complaints (Court File Nos. 64, 78) the District asserted additional claims against OCI for violations of the Tennessee Consumer Protection Act and fraud as well as a claim under the Uniform Fraudulent Transfer Act ("UFTA") against OCI and five new defendants (*see* Court File No. 78). The new defendants included Cohen; Newfield; Orbacom Systems, Inc. ("OSI"), a New Jersey corporation; OCI Liquidating LLC ("OCI Liquidating"), a New Jersey limited liability company; and IPC Information Systems Holding, Inc. ("IPC"), a Delaware corporation. Cohen, a Florida resident, owns 80 percent of OCI's stock and served as the company's

3

chief executive officer while Newfield, a New Jersey resident, owns the remaining 20 percent and served as OCI's secretary (Court File No. 78, ¶¶ 42-43; Court File No. 90, Exhs. B & C).

According to the District's Second Amended Complaint, Defendants caused OCI to pay to them more than $250,000 in 2003 and 2004 following notification of the District's claims against OCI (Court File No. 78, ¶ 44). On October 1, 2004, the District alleges OCI entered into an Agreement and Plan of Reorganization ("Reorganization Plan") with OSI, an affiliate owned primarily by Cohen and in which Newfield served as secretary (Court File No. 78, ¶¶ 45-46; Court File No. 90, Exh. C). Pursuant to the terms of the Reorganization Plan, OCI "sold and transferred substantially all of its remaining assets" to OSI in exchange for 50 percent of OSI's stock (Court File No. 78, ¶¶ 45-47). OCI, however, retained all of its own liabilities (*id.* ¶ 49; Court File No. 90, Exh. C ¶ 2.2). The Reorganization Plan further provided for the liquidation of OCI and its conversion into OCI Liquidating (Court File No. 90, Exh. C ¶ 6.1.1), which presumably would continue to be owned entirely by Cohen (80 percent) and Newfield (20 percent) (Court File No. 90, Exh. C ¶ 6.1.2; *see also* Court File No. 78, ¶¶ 47-48). Newfield signed the Reorganization Plan himself as secretary of both OCI and OSI and Cohen and Newfield, acting as shareholders and directors of OCI and directors of OSI, signed two separate unanimous consent documents authorizing the actions taken in the Reorganization Plan by each of the two entities involved (Court File No. 90, Exh. C, pp. 6-10).

Also on October 1, 2004, OCI Liquidating and IPC executed a Stock Purchase Agreement whereby OCI Liquidating would sell its OSI stock to IPC (Court File No. 90, Exh. D; Court File No. 78, ¶¶ 50-52). The District alleges the proceeds from this sale were to be distributed to OCI's shareholders (*i.e.*, Defendants) (*id.* ¶¶ 48, 50-52). The Stock Purchase Agreement, signed by Cohen,

4

originally contained an express warranty there was no pending litigation against OSI or any of its affiliates except for a couple of workers' compensation claims (Court File No. 90, Exh. D § 2.13, Sellers' Sched. 2.13). The District's pending action against OCI was not listed. The District alleges it uncovered this omission in the course of discovery and following communications with the District, OCI Liquidating and IPC amended the Stock Purchase Agreement to include the District's litigation (*see* Court File No. 81, Exh. D, Sellers' Sched. 2.13). The amended Stock Purchase Agreement also included a provision requiring distribution of $600,000 be withheld in order to cover any liabilities associated with the District's claims against OCI (Court File No. 78, ¶ 53; Court File No. 81, Exh. D). Shortly after the Stock Purchase Agreement, the District alleges OCI Liquidating distributed approximately $1,137,000 to two individuals who are not OCI shareholders in violation of the terms of the Reorganization Plan (Court File No. 78, ¶ 55). The District generally contends the actions of the various individuals and entities named as defendants have operated to render OCI functionally insolvent and, therefore, unable to satisfy any liabilities to the District.

## III.  DISCUSSION

"When determining whether there is personal jurisdiction over a defendant, a federal court must apply the law of the state in which it sits, subject to constitutional limitations." *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir. 1994). Tennessee law provides as follows:

> Persons who are nonresidents of Tennessee . . . are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from . . . (6) Any basis not inconsistent with the constitution of this state or of the United States . . . .

Tenn. Code Ann. § 20-2-214(a). Where, as is the case with Tennessee, a state's long-arm statute

5

reaches as far as the limits of the United States Constitution, the Court "need only determine whether the assertion of personal jurisdiction . . . violates constitutional due process." *Nationwide*, 91 F.3d at 793. "[D]ue process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 339, 342-43, 85 L. Ed. 278 (1940); *Bird v. Parsons*, 289 F.3d 865, 871-72 (6th Cir. 2002). Personal jurisdiction over a non-resident defendant may be asserted under either general or specific theories of jurisdiction. *Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 981 (6th Cir. 1992).

Defendants' motion to dismiss argues the Court lacks personal jurisdiction over them because neither do they have the sort of continuous or systematic contacts necessary to permit the Court to exercise general jurisdiction over their persons nor do the District's UFTA claims arise from either of their forum-related activities so as to support specific personal jurisdiction. The District concedes Defendants have no continuing or systematic connections with Tennessee, but claims jurisdiction is proper because Defendants acted in concert with the other defendants to frustrate the District's attempt to successfully litigate its claim against OCI (Court File No. 90, p. 9). The District's argument in support of personal jurisdiction relies on both traditional notions of specific jurisdiction as well as the conspiracy theory of jurisdiction.

The showing required for the assertion of specific jurisdiction is considerably less than that required for general jurisdiction and a plaintiff must merely demonstrate his cause of action arises out of the defendant's forum-related contacts. Those contacts, however, must still demonstrate defendants "purposefully directed [their] activities toward the residents of the forum" or

6

purposefully availed themselves of the benefits of the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-74, 105 S. Ct. 2174, 2182-83, 85 L. Ed. 2d 528 (1985). As long as the defendant's conduct is such that the defendant "should reasonably anticipate being haled into court [in that forum]," the necessary minimum contacts for specific jurisdiction have been shown. *World-wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 567, 62 L. Ed. 2d 490 (1980). The Sixth Circuit has developed a three-part test to determine if a court's exercise of jurisdiction comports with due process:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Bridgeport*, 327 F.3d at 477-78; *see also Payne v. Motorists' Mut. Ins. Cos.*, 4 F.3d 452, 455 (6th Cir. 1993). A finding of purposeful availment on the part of the defendant is essential to a specific jurisdiction determination. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000). This prong ensures a defendant is not called into a particular court due entirely to "random, fortuitous, or attenuated contacts." *Burger King*, 471 U.S. at 475, 105 S. Ct. at 2183 (internal quotation and citation omitted). The defendant must purposefully direct his activities toward forum residents in order for jurisdiction to fall within the confines of due process. *Id.* at 476, 105 S. Ct. at 2184. Intentional, tortious acts committed outside the forum state but directed toward forum residents are sufficient. *See Calder v. Jones*, 465 U.S. 783, 788-89, 104 S. Ct. 1482, 1486-87, 79 L. Ed. 2d 804 (1984).

The District alleges Cohen and Newfield "purposely acted to cause a consequence in Tennessee by their participation in the concerted scheme to violate the [UFTA]" and thereby harm

7

the District in its original litigation by placing OCI's assets beyond its reach and the reach of this Court (Court File No. 90, p. 10; Court File No. 78, ¶¶ 56-63). Specifically, the District claims Cohen "caused OCI, OSI, and OCI Liquidating LLC to enter into the transactions [described above]" and Newfield "consented to the transactions" (*id.* ¶¶ 42-43). The District further alleges Cohen and Newfield intended to drain the assets of OCI and OCI Liquidating "for [their] personal benefit" (*id.*). As such, the District contends Defendants are "primary participants in an alleged wrongdoing intentionally directed at a Tennessee public corporation" and designed to deprive the District of a remedy for the allegedly wrongful actions of OCI, therefore, the Court has personal jurisdiction over Defendants with respect to the District claims based upon those actions (Court File No. 90, p. 12). Thus, it appears the District's argument intends to rely upon the "effects" theory of specific personal jurisdiction set out by the Supreme Court in *Calder v. Jones*, 465 U.S. at 790, 104 S. Ct. at 813 (holding minimum contacts with California established in libel action even though allegedly libelous publication was written and edited in Florida by Florid residents where intentional tortious actions of defendants was expressly aimed at California and defendants knew harm to plaintiff's career and reputation would occur there).

In their reply brief, Defendants challenge the District's reliance upon *Calder* by arguing the District must allege something more than that Defendants' actions were intentionally directed at the District or caused harm in Tennessee and, in any event, Defendants were acting in their capacities as officers and shareholders of the various entities involved and they cannot be hailed into court based upon whatever minimum contacts with the forum one of those business entities might have had (Court File No. 92, pp. 2-5). The case law makes clear the mere allegation an out-of-state defendant has engaged in intentional tortious conduct which has injured a forum resident does not

8

necessarily establish the defendant possesses the constitutionally required minimum contacts with that forum to support personal jurisdiction. *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1079 (10th Cir. 1995); *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1118-20 (6th Cir. 1994); *Wallace v. Herron*, 778 F.2d 391, 394 (7th Cir. 1985). Rather, the Court must make a particularized inquiry of the relations and dealings between the parties giving rise to the dispute. For example, in *Reynolds* the Sixth Circuit concluded an Ohio district court did not have *in personam* jurisdiction over certain American and international amateur athletic organizations in a banned athlete's action for breach of contract, defamation, and intentional interference with business relations. 23 F.3d at 1118-20. The Sixth Circuit noted the defendants had directed phone calls and correspondence to the plaintiff in Ohio, but no contract had ever been negotiated, created, performed, or breached in Ohio, the allegedly defamatory press release involved the plaintiff's activities in Monaco (*i.e.*, not Ohio) and was neither published nor circulated in Ohio itself, and the plaintiff's professional reputation as an international athlete was not centered in Ohio. *Id.* The Sixth Circuit reasoned the plaintiff's choice of residence is a unilateral one, therefore, personal jurisdiction over a non-forum defendant must be based upon some additional availing factors. *Id.* at 1118-19.

In this case, the District's complaint outlines a number of different activities on the part of Defendants which suffice to invoke the Court's jurisdiction over them (Court File No. 78, ¶¶ 44-55). The District has alleged Defendants oversaw the Reorganization Plan and approved the arrangement allowing the proceeds of the OSI stock transfer to go directly to them, leaving OCI and OCI Liquidating as corporate shells. In addition, Defendants, who were the only individuals authorized to approve company checks in excess of $500, approved the payment of hundred of thousands of dollars to themselves and others without receiving consideration. Although all of these activities

9

were performed outside of Tennessee, the District has effectively alleged their motivation and purpose was the avoidance of liability in litigation proceeding in Tennessee involving a Tennessee plaintiff and based upon a contract entered into in Tennessee, governed by the law of Tennessee, and calling for the provision of goods and services in Tennessee. Defendants also purposefully availed themselves of causing a consequence in Tennessee by participating in the misrepresentation of OCI's liabilities in the OSI-IPC Stock Purchase Agreement. Cohen, on behalf of all the company's representatives, signed the initial Stock Purchase Agreement which failed to account for the District's pending litigation against OCI, an affiliate of OSI. The corporations later attempted to rectify this error, but had the District not discovered this misrepresentation, OCI's assets would have been completely drained and no funds whatsoever would have remained for the litigation. Construing the allegations in the light most favorable to the District, it is evident the District has set forth a *prima facie* case that Defendants acted independently, purposefully, and tortiously to affect litigation in Tennessee by rendering OCI insolvent and unable to satisfy the District's original claims.

Defendants also claim "at all times [they] were acting in their capacities as corporate officers" and appear to argue the fiduciary shield doctrine prevents personal jurisdiction from being created based upon their actions in transacting business as corporate officers (Court File No. 92, p. 4). Setting aside the question of whether Defendants could be deemed alter egos of the various entities involved in this case, "[w]here the forum state's long-arm statute is coextensive with the full reach of due process, the fiduciary shield doctrine is inapplicable." *MCA Records, Inc. v. Highland Music, Inc.*, 844 F. Supp. 1201, 1203 (M.D. Tenn. 1993) (citing 3A William M. Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations*, § 1296.1). Moreover, the District alleges

10

Defendants' actions not only operated to bankrupt OCI and OCI Liquidating, but were intentionally designed to procure significant financial benefits for themselves, thus Defendants were acting beyond the scope of their roles as corporate officers in seeking to bankrupt OCI and harm the District's litigation in Tennessee.

In its response to Defendants' motion to dismiss (Court File No. 90), the District focuses entirely on the purposeful availment requirement for specific jurisdiction and fails address the second and third prongs of the test. Although purposeful availment has been described by the Sixth Circuit as "the *sine qua non* of *in personam* jurisdiction," *Theunissen v. Matthews d/b/a Matthews Lumber Transfer*, 935 F.2d 1454, 1458 (6th Cir. 1991), the Court notes the District's response and complaint provide sufficient information to support findings on the second and third prongs of the personal jurisdiction analysis. The second prong of the test requires that the action "arise from" the defendant's activities in the forum. *Bridgeport*, 327 F.3d at 477-78. The Sixth Circuit has recognized activities which are "connected with" or "related to" the forum will suffice to satisfy this requirement. *Youn v. Track, Inc.*, 324 F.3d 409, 419 (6th Cir. 2003). Here, the District's claims against Defendants under the UFTA arise out of an underlying dispute in Tennessee over a contractual relationship with a Tennessee public corporation. The specific actions underlying the District's UFTA allegations are alleged to have been conducted with the purpose of interfering with this litigation in Tennessee. Specifically, the District is suing Defendants for taking actions to bankrupt OCI and place its assets beyond the reach of the District and a Tennessee court. Thus, the present action arises from Defendant's activities both within and directed towards the forum state, thereby satisfying the second prong of the jurisdictional test.

The final requirement under the Sixth Circuit's test is that the defendant's activities have a

11

substantial connection to the forum state so that exercise of jurisdiction would be "reasonable." *Bridgeport*, 327 F.3d at 478. Reasonableness is further determined by examining "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *Youn*, 324 F.3d at 419 (quoting *Asahi Metal Indus. Co. v. Super. Ct. of California*, 480 U.S. 102, 113, 107 S. Ct. 1026, 1033, 94 L. Ed. 2d 92 (1987)). This Court's exercise of jurisdiction over Defendants is reasonable given the allegations that Defendants acted with the intent to interfere with litigation in the state of Tennessee. Certainly, Cohen and Newfield will be burdened by having to travel from Florida and New Jersey, respectively, to address the District's claim against them. However, in light of the alleged actions Defendants took to frustrate the District's original claim, which they have not challenged, it would not be unreasonable for them to be called into this Court. In viewing the allegations in the light most favorable to the District, it is evident Defendants placed themselves at the mercy of this Court by acting intentionally to interfere with its administration of justice regarding the District's claim against OCI. By taking steps to place OCI's assets beyond the reach of the District and this Court, Defendants took it upon themselves to cause a consequence in Tennessee such that they should be expected to bear the burden of coming to court here. Furthermore, Tennessee, as the forum state in this case, has a substantial interest in the Court's exercise of jurisdiction over Defendants in light of the fact the litigation involves a publicly-owned corporation responsible for addressing the emergency needs of an entire county.

In sum, Defendants' actions to intentionally bankrupt OCI and harm the District in its original litigation are sufficient to warrant the Court's exercise of jurisdiction over them. They purposefully availed themselves of causing a consequence in the State of Tennessee, the District's complaint arises from those actions, and the connection between Defendants' actions and the state

12

are substantial enough to make the exercise of jurisdiction reasonable. Because the Court concludes the District has alleged facts sufficient to establish the minimum contacts necessary to justify the Court's exercise of specific personal jurisdiction, the Court need not address the District's alternative argument premised upon Tennessee's version of the conspiracy theory of personal jurisdiction.

**IV.** **CONCLUSION**

For the reasons stated above, the Court will **DENY** the District's motion to file a supplemental brief (Court File No. 97) and will **DENY** Defendants' motion to dismiss (Court File No. 80).

An Order shall enter.

>     **/s/**
> **CURTIS L. COLLIER**
> **UNITED STATES DISTRICT JUDGE**