UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| HAMILTON COUNTY EMERGENCY ) | |
| COMMUNICATIONS DISTRICT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | No. 1:04-CV-7 |
| ORBACOM COMMUNICATIONS ) | |
| INTEGRATOR CORPORATION, ) | Judge Curtis L. Collier |
| ORBACOM SYSTEMS, INC., OCI ) | |
| LIQUIDATING LLC, IPC INFORMATION ) | |
| SYSTEMS HOLDING, INC., HERBERT ) | |
| COHEN, and RONALD NEWFIELD, ) | |
| ) | |
| Defendants. ) | |

**M E M O R A N D U M**

    Before the Court is a motion in limine (Court File No. 117) filed by Plaintiff Hamilton County Emergency Communications District ("Plaintiff") seeking to exclude the testimony of Frank Koperda, an expert witness offered by Defendants Orbacom Communications Integrator Corporation, OCI Liquidating LLC, Herbert Cohen, and Ronald Newfield (collectively, "Defendants"). Plaintiff filed a memorandum in support of its motion (Court File No. 118), Defendants filed a memorandum in opposition (Court File No. 121), and Plaintiff filed a reply brief (Court File No. 125). On August 3, 2005, the parties appeared before the Court and presented evidence and argument on Plaintiff's motion. For the following reasons, the Court will **GRANT** Plaintiff's motion at this time.

**I.    STANDARD OF REVIEW**

Federal Rule of Evidence 702 provides as follows:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. In *Daubert v. Merrill Dow Pharms., Inc.*, the Supreme Court provided guidance in how to implement this rule. 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). The Court explained Rule 702 imposes a special obligation upon a trial judge to "ensure that any and all scientific testimony . . . is not only relevant, but reliable." *Id.* at 589, 113 S. Ct. at 2795. This general gatekeeping obligation applies to all expert testimony, not just expert testimony which is scientific in nature. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147-49, 119 S. Ct. 1167, 1174-75, 143 L. Ed. 2d 238 (1999). The purpose of the gatekeeping requirement is to ensure an expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152, 119 S. Ct. at 1176. The district court must determine whether the evidence both rests on a reliable foundation and is relevant to the task at hand. In assessing relevance and reliability, the district court must examine "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact." *Jahn v. Equine Servs., PSC*, 233 F.3d 382, 388 (6th Cir.2000) (citations omitted). The party offering the expert in question has the burden of proving admissibility. *Daubert*, 509 U.S. at 592 n. 10, 113 S. Ct. at 2796 n. 10; *Smelser v. Norfolk Southern Ry. Co.*, 105 F.3d 299, 303 (6th Cir. 1997).

District courts are granted considerable leeway in ruling on the admissibility of a particular

expert's opinion, but are not required to admit opinion evidence "which is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply to great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 519, 139 L. Ed. 2d 508 (1997). A court's inquiry should focus solely on principles and methodology, not on the conclusions they generate. *Daubert*, 509 U.S. at 595, 113 S. Ct. at 2797. Courts should confirm "the factual underpinnings of the expert's opinion [are] sound," *Greenwell v. Boatwright*, 184 F.3d 492, 498 (6th Cir. 1999), but generally vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence. *Daubert*, 509 U.S. at 596, 113 S. Ct. at 2798. The Sixth Circuit has held "Rule 702 should be broadly interpreted on the basis of whether the use of expert testimony will assist the trier of fact." *Morales v. Am. Honda Motor Co.*, 151 F.3d 500, 516 (6th Cir.1998). "Mere weaknesses in the factual basis of an expert witness's opinion . . . bear on the weight of the evidence rather than on its admissibility." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000).

II. **RELEVANT FACTS**

Plaintiff is a public Tennessee corporation charged with the statutory responsibility of creating and managing the emergency communications system for Hamilton County, Tennessee. Defendant Orbacom Communications Integrator Corp. ("OCI") is a New Jersey corporation, Defendant OCI Liquidating LLC ("OCI Liquidating") is a New Jersey limited liability company, Defendant Herbert Cohen is a Florida resident who owns 80% of OCI's stock and formerly served as the company's chief executive officer, and Defendant Ronald Newfield is a New Jersey resident

3

who owns the remaining 20% of OCI's stock and formerly served as secretary of the company. In its "Second Amended Complaint for Injunctive and Other Relief," Plaintiff alleges that in the spring of 2002 following a competitive procurement process, it entered into a contract with OCI pursuant to which Plaintiff "was to receive upgraded computer hardware and software for use in fulfilling [its] emergency communications function" (Court File No. 78, ¶¶ 5-6). Two types of software were to be provided by OCI under the contract: (1) telephony software which would permit operators "to efficiently receive and record calls for emergency assistance," and (2) computer assisted dispatch ("CAD") software designed to allow operators "to efficiently dispatch calls to appropriate response personnel" (*id.* at ¶ 6). Additionally, OCI was to provide specified computer hardware and associated operating system software on which the telephony and CAD software would be operated (*id.* at ¶ 9). The documentation reflecting the agreement between the parties consists primarily of Plaintiff's request for proposal ("RFP") and OCI's response thereto and is attached to Plaintiff's Second Amended Complaint as Exhibit A (hereinafter "Contract").

Plaintiff received and paid for the hardware and operating system software, but alleges OCI has failed to deliver title, licensing, and warranty documentation for these goods (*id.* at ¶ 11). Further, Plaintiff alleges certain of the hardware does not comply with the performance and functional specifications set out in the Contract (*id.* at ¶¶ 10-11). Specifically, Plaintiff alleges the CAD workstations provided by OCI utilized Intel Pentium 4 processors rather than the Intel Xeon processors called for in the Contract (*id.* at ¶¶ 66-70; *see also* Court File No. 118, Exh. 1, pp. 5-6). Plaintiff has accepted and is satisfied with the telephony software (which was provided and installed by a subcontractor, Positron Public Safety Systems Corp.), but alleges OCI has "fail[ed] to comply with the specifications and standards set forth in the [Contract] for the operation and performance

4

of the CAD Software" (*id.* at ¶¶ 12-13). Plaintiff additionally alleges OCI refused, neglected, and failed to provide such work, personnel, and equipment as was required by the Contract (*id.* at ¶¶ 14-18). As a result, Plaintiff "terminated" those portions of the Contract relating to the CAD software (*id.* at ¶¶ 20-22).

Plaintiff seeks an injunction requiring OCI to submit to the audit procedures called for in the Contract and deliver to Plaintiff appropriate title/license/warranty documentation for the hardware and operating system software (Court I); reimbursement of $568,382.43 reflecting payments made to OCI in excess of those due for the hardware, operating system software, and telephony software (Count II); damages for breach of contract (Count III), damages for violations of the Tennessee Consumer Protection Act ("TCPA") (Count IV), and damages for fraud, deceit, and fraudulent misrepresentation (Count V). Plaintiff additionally alleges Defendants and two other entities (Orbacom Systems, Inc. and IPC Information Systems Holding, Inc.) engaged in violations of the Uniform Fraudulent Transfer Act and seeks to avail itself of the remedies provided thereunder (*id.* at ¶¶ 38-63).

## III. DISCUSSION

Defendants have stated they intend to proffer the expert testimony of Frank Koperda "with respect to issues raised by plaintiff's claims arising out of OCI providing plaintiff with computer workstations powered by Intel Pentium processors to run OCI's 'Genisis' computer aided dispatch (CAD) software and Positron's telephony software" (Court File No. 121, p. 1). In his expert report (Court File No. 121, Exh. 2), Koperda opined the computer workstations provided by OCI to Plaintiff which used a Pentium 4 processor "would have performed substantially equivalent to a

5

workstation having a Xeon processor for this RFP" (*id.* at 4).  Plaintiff contends Koperda's opinion is neither relevant nor reliable and should be excluded.

**A.      Relevance**

Plaintiff's general position in this litigation is that OCI surreptitiously delivered to Plaintiff workstations powered by cheaper and inferior Pentium 4 processors, Plaintiff could not utilize those workstations to operate the CAD software, and Plaintiff was forced to replace the workstations at a cost exceeding $384,000 (Court File No. 78, ¶¶ 66-75; Court File No. 118, p. 8).  Plaintiff contends the Contract clearly specifies OCI was to provide computer workstations equipped with Xeon processors, therefore, any opinion offered by Koperda as to the relative cost and capabilities of Pentium processors is beside the point (Court File No. 118, pp. 7-8).  Moreover, to the extent Defendants dispute this interpretation of the agreement, Plaintiff argues the meaning of the Contract is a question of law for the Court and Koperda's opinion is of no help on that issue.  Defendants do, in fact, dispute Plaintiff's claim the Contract required the use of Xeon processors (*see* Court File No. 121, p. 4 n. 1), but concede Koperda's testimony does not bear upon this issue which, in any event, is not presently before the Court.  However, Defendants maintain Koperda's opinion is directly relevant to the issue of substantial performance with respect to Plaintiff's breach of contract claim, the issue of intent with respect to Plaintiff's common law fraud claim and the treble damages provision of the TCPA claims, and the issue of damages with respect to all three claims.

The common law doctrine of substantial performance generally operates to prevent nominal or technical departures from the terms of a contract from rising to the level of a breach.  Tennessee courts, however, appear exceedingly reluctant to apply the doctrine of substantial performance in a manner that denies effect to the explicit terms of a contract.  *See Tenn. Div. of United Daughters*

6

*of the Confederacy v. Vanderbilt Univ.*, --- S.W.3d ----, 2005 WL 1033520, at *15 (Tenn. Ct. App. May 3, 2005) (slip opinion) ("The courts must interpret contracts as they are written and will not make a new contract for parties who have spoken for themselves. The courts do not concern themselves with the wisdom or folly of a contract, and are not at liberty to relieve parties from contractual obligations simply because these obligations later prove to be burdensome or unwise." (citations omitted)); *SDS Assocs., Inc. v. Bldg. Plastics, Inc.*, No. W2002-01532-COA-R3-CV, 2003 WL 21998348, at *11-12 (Tenn. Ct. App. Aug. 22, 2003) (unpublished opinion) (holding provision of written analysis and oral recommendation did not amount to substantial performance where contract explicitly called for "a written report as to recommendations"); *Ballard v. North Am. Life & Cas. Ins. Co.*, 667 S.W.2d 79, 82 (Tenn. Ct. App. 1983) (stating a contract must be "enforced as written even though it contains terms which may be thought harsh and unjust"); *see also Conn Aire, Inc. v. J.C. Leasing*, 921 F. 2d 276, 1990 WL 209580, at *4-7 (6th Cir. 1990) (unpublished table opinion) (holding that while defendant's failure to bind successor to exclusive use covenant contained in prior agreement with plaintiff did not in itself amount to a material breach of that agreement, defendant's divestment of ability to perform its obligation thereunder did amount to breach sufficient to justify repudiation of contract by plaintiff even though successor had only allowed *de minimis* variances from covenant and plaintiff had not suffered any damages). As such, it is not at all apparent at this time the doctrine of substantial performance will even have an application in this case.

      As for intent, in order to recover on its common law fraud claim Plaintiff will have to prove any alleged misrepresentation of material fact was made both with knowledge of its falsity and with a fraudulent intent. *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 66 (Tenn. 2001). Further,

assuming Plaintiff is able to prove Defendants used an unfair or deceptive act or practice in violation of the TCPA, Plaintiff could then seek an award of treble damages if it is able to prove a "willful or knowing violation." Tenn. Code Ann. § 47-18-109(a)(3). Although intent will certainly be an issue in this case, the Court finds no basis, at least at this time, for concluding Koperda's testimony would be relevant to any of the questions of intent and/or knowledge raised by Plaintiff's claims. Both the fraud claim and the TCPA treble damages provision require an examination of Defendants' subjective intent either at the time they entered into the Contract or at the time of their performance thereunder. There is no indication Koperda was personally involved in any of these events or that he ever offered any contemporaneous opinion, analysis, or advice to Defendants regarding the functional equivalence of Pentium 4 and Xeon processors. As such, Koperda can offer no testimony with respect to Defendants' *ex ante* intent. Moreover, to the Court's knowledge neither Defendants nor any of their agents have yet claimed to have understood or believed Pentium 4 and Xeon processors to be substantially equivalent for Plaintiff's intended application such as to arguably make Koperda's *post hoc* opinion relevant as to the reasonableness or credibility of such claims.

Finally, although Koperda's opinion would clearly be relevant to a claim for consequential damages flowing from an alleged breach of contract, at oral argument counsel for Plaintiff stated the only remedy Plaintiff intends to seek is recision of the Contract and reimbursement of the funds paid to OCI which for equipment and services not actually provided by Defendants. As such, it does not appear Plaintiff intends to attempt to recover its replacement costs or any other damages flowing from the alleged breach of contract, fraud, and/or TCPA violation. As long as Plaintiff is willing to so limit the recovery it seeks, Koperda's opinion has nothing to offer the Court or a jury in determining an appropriate amount of damages.

**B.     Reliability**

Although the Court finds Koperda's testimony not relevant to any matter currently at issue in this case, the Court notes it is possible events may come to pass which will render his opinion relevant. Accordingly, the Court will offer some initial thoughts on Koperda's reliability. Plaintiff argues Koperda's opinion is unreliable because he "has set forth no scientific or technical bases for [his] conclusion" (Court File No. 118, p. 8). Koperda's report indicates he based his opinion on his prior knowledge and experience, the hardware specifications from OCI's proposal, information gleaned from speaking with two individuals affiliated with Defendants, price quotes and invoices for the workstations provided by OCI, the technical specifications for the Dell Precision 340 and 530 workstations, and performance benchmarks for the Pentium 4 and Xeon processors obtained from six internet articles (Court File No. 121, Exh. 2, pp. 5-8). Based upon this information, Koperda then made comparisons of the Pentium and Xeon processors in four different areas: (1) technical differences; (2) overall cost of ownership; (3) differences in general performance/operator experience; and (4) processor utilization or "load" when running the Genisis CAD application.

To be sure, Koperda's report leaves much to be desired. He never conducted any tests himself nor did he ever make a direct side-by-side comparison of the relative performance of the two processors within the particular context and application at issue in this case nor did he ever so much as observe the operation of a single workstation running CAD software. Instead, Koperda has relied exclusively on the work, representations, and conclusions of others. There is no absolute rule that the failure to test a theory or opinion renders an expert's testimony wholly unreliable. *See Clay v. Ford Motor Co.*, 215 F.3d 663, 668 (6th Cir. 2000) ("The district court, in its discretion, could have decided that [the expert's] failure to test his theories went to the weight of his testimony regarding

defects in the Bronco II, not to its admissibility."). Nonetheless, Koperda himself seems to acknowledge his approach was somewhat less than fully desirable (*see* Court File No. 121, Exh. 2, p. 28 ("The most accurate comparison results are obtained by running the workstations in the identical operational environment. I am not aware of any direct comparison made between these two types of workstations using the software that was specified in the response to the RFP.")).

It is also significant that Koperda relied exclusively upon information and interpretations provided by Defendants and individuals affiliated with them. Not only did Koperda never interview or submit questions to any individuals associated with Plaintiff, he did not even personally review the full Contract and the specifications therein. Further, Koperda does not appear to have conducted anything more than the most cursory of investigations into the reliability of many of the sources upon which he relied for benchmark data and although he relied upon data from Cocke County, Tennessee in formulating his opinion as to the ability of the respective processors to handle the load associated with running the Genisis CAD program, he never made any attempt to identify or account for potential differences in population, call volume, and system size between Hamilton and Cocke Counties.

While Koperda's analysis relies heavily on inference and extrapolation, these things are not anathema to either Rule 702 or *Daubert* and Koperda's opinions are not entirely without basis. Koperda's does collect data and present comparisons between the two processors and these comparisons are generally designed to hit upon matters which would be relevant to the application and environment involved in this case. That his process and analysis was less than ideal does not necessarily render his opinion inadmissible. Nonetheless, the Court is not required to admit opinion evidence "which is connected to existing data only by the *ipse dixit* of the expert" and may conclude

"there is simply too great an analytical gap between the data and the opinion proffered." *Joiner*, 522 U.S. at 146, 118 S. Ct. at 519.  At this point in time the Court defers ruling on the question of whether the shortcomings in Koperda's testimony are a basis for exclusion or simply a matter to be left to vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.  Should Koperda's opinions become relevant at some later date, the Court will make a definitive ruling at that time.

## IV. CONCLUSION

Because the Court finds the expert opinions offered by Koperda are not relevant to any matter presently at issue in this litigation, the Court will **GRANT** Plaintiff's motion in limine (Court File No. 117).  However, the Court reserves the right to revisit this ruling should events warrant.

An Order shall enter.

**/s/**
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**
