UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| HAMILTON COUNTY EMERGENCY ) | |
| COMMUNICATIONS DISTRICT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | No. 1:04-CV-7 |
| ORBACOM COMMUNICATIONS ) | |
| INTEGRATOR CORPORATION, ) | Judge Curtis L. Collier |
| ORBACOM SYSTEMS, INC., OCI ) | |
| LIQUIDATING LLC, IPC INFORMATION ) | |
| SYSTEMS HOLDING, INC., HERBERT ) | |
| COHEN, and RONALD NEWFIELD, ) | |
| ) | |
| Defendants. ) | |

**M E M O R A N D U M**

This matter comes before the Court on the Motion for Summary Judgment (Court File No. 40) filed by Plaintiff Hamilton County Emergency Communications District ("Plaintiff"). In its motion, Plaintiff moves for summary judgment on its claims for injunctive relief, reimbursement of monies paid, breach of contract, and Defendant Orbacom Communications Integrator Corp.'s ("OCI") counter-claim for breach of contract. OCI filed a response (Court File No. 54) and Plaintiff filed a reply (Court File No. 59). OCI, along with its successor in interest, OCI Liquidating LLC ("OCI Liquidating"),[1] filed a supplemental response (Court File No. 134) and Plaintiff filed a supplemental reply (Court File No. 146).

---

[1] In this memorandum, the Court will, except as otherwise noted, collectively and individually refer to OCI and OCI Liquidating as "OCI".

For the following reasons, Plaintiff's motion will be **GRANTED IN PART** and **DENIED IN PART**. The Court will (1) **GRANT** Plaintiff's motion for summary judgment regarding the audit clause and allow Plaintiff to audit OCI; (2) **DENY** Plaintiff's motion for summary judgment on its reimbursement claim; (3) **DENY** Plaintiff's motion for summary judgment on its breach of contract claim; (4) **GRANT IN PART** Plaintiff's motion for summary judgment on OCI's counter-claim regarding Plaintiff's breach in terminating the Contract; and (5) **DENY IN PART** Plaintiff's motion for summary judgment on OCI's counter-claim regarding Plaintiff's breach in not paying OCI for milestones completed.

I. <u>**STANDARD OF REVIEW**</u>

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the burden is on the moving party to conclusively show no genuine issue of material fact exists, *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003), and the Court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). However, the nonmoving party is not entitled to a trial merely on the basis of allegations, but must come forward with some significant probative evidence to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary

judgment. *Id.* at 323, 106 S.Ct. at 2552.

The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question, but does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003). The standard for summary judgment mirrors the standard for directed verdict. *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511. The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52, 106 S. Ct. at 2512. There must be some probative evidence from which the jury could reasonably find for the nonmoving party. If the Court concludes a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Id.*; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

**II.     RELEVANT FACTS**

Plaintiff is a public Tennessee corporation charged with the statutory responsibility of creating and managing the emergency communications system for Hamilton County, Tennessee. OCI is a New Jersey corporation and OCI Liquidating is a New Jersey limited liability company and is the successor by merger to OCI (Court File No. 1, Counter Claim at ¶ 2). In early 2001, Plaintiff decided to replace its telephony and computer assisted dispatch ("CAD") system.[2] To start the

---

[2] A CAD system is designed to permit emergency communication operators to efficiently dispatch calls to appropriate response personnel and is important to the identification of the location of emergency callers using mobile telephones (Court File No. 41, p. 3).

3

process, Plaintiff prepared a Request for Proposals ("RFP") which was distributed to potential vendors (Court File No. 134, Exh. A). Plaintiff was not satisfied with the responses it received from potential vendors, so it retained a consulting firm, L. Robert Kimball & Associates ("Kimball") to prepare a new RFP (Court File No. 134, Exh. B, Deposition of Mark Martorano ("Martorano Dep.") at 11-23; Court File No. 134, Exh. C, Terry Johnston Deposition ("Johnston Dep.") at 15-17). The new RFP was sent out in 2002. The 2002 RFP differed from the 2001 RFP partly because the 2002 RFP did not contain all of the functional specifications derived from the desires of actual users of the CAD system[3] (*See* Court File No. 134, Exh. D, Deposition of Nola Brumit ("Brumit Dep.") at 25-26; Johnston Dep. at 53-56). One of the potential vendors, OCI, submitted a proposal. In March 2002, Plaintiff's Board of Directors ("Board") voted to accept the OCI proposal and authorized Kimball to assist Plaintiff in negotiating a final agreement (Brumit Dep. at 37, 39-40; Martorano Dep. at 33-36; Court File No. 134, Exh. H). During these negotiations, it was decided the telephony system would be installed first,[4] followed by the CAD system (Brumit Dep. at 45-46). Further, Plaintiff decided to have its own personnel responsible for data conversion and entry into the database used in the CAD system (*Id.* at 38; Watkins Dep. at 37).[5] Eventually, on March 23, 2002 Plaintiff and OCI signed an agreement (hereinafter "Contract") consisting primarily of OCI's response to Plaintiff's 2002 RFP (Court File No. 41, Exh. A). An attachment was made part of the

---

[3] OCI describes the specification requirements of the 2001 RFP derived from the users of the system as a "wish list" (Court File No. 134, p. 4). In other words, the individuals who would be using the CAD system put together a list of ideas of how they thought the system should run and put those ideas in the 2001 RFP.

[4] Plaintiff has accepted and is satisfied with the telephony software which was provided and installed by a subcontractor, Positron Public Safety Systems Corporation.

[5] The data consisted of administrative data for incidents, units, and common-place information as well as GIS/Mapping data (Court file No 41, p. 4).

4

Contract and dated April 17, 2002.[6] The Contract required OCI to provide computer hardware and operating system software on which the CAD system would be operated (Court File No. 108). Further, Plaintiff agreed to make periodic payments based on the completion of specified "milestones" (*see* Contract, Attachment A).

The project proceeded in 2002, albeit with delays, beginning with the installation of computer hardware and the telephony software. According to John J. Hines ("Hines"), the President of OCI, the CAD software was installed and invoiced to Plaintiff by December 23, 2002 (Court File No. 55, Affidavit of John J. Hines ("Hines Aff.") at ¶ 16). In January 2003, new consultants from Kimball, Leonard Kowalski ("Kowalski") and Ervin Dinsmore ("Dinsmore"), took over the project (Court File No. 146, p. 7; Court File No. 134, p. 6; Hines Aff. at ¶ 19). Later that month, Kowalski advised Plaintiff not to make any additional payments to OCI because the payments had proceeded ahead of implementation (Court File No. 134, Exh. L). Allegedly, Plaintiff took Kowalski's advice and refused to make some milestone payments despite the completion of some milestones (Court File No. 134, Exh. AJ; Court File No. 134, p. 7). In February 2003, OCI attempted to demonstrate the functionality of its CAD system to the individuals who would use the system. The demonstration went poorly and the users became upset because the CAD system did not meet their expectations (Court File No. 134, Exh. N, Deposition of Mark Broadway ("Broadway Dep.") at 75-76, 79-80). The users were upset because the CAD system did not provide the functionality they expected it to provide and the CAD system was much different from what they were using at the

---

[6] OCI originally admitted the attachment made part of the Contract was entered into on April 17, 2002 but it later amended its Answer to deny the attachment was executed on April 17, 2002 (Court File No. 108). In its briefs, OCI does not given an alternative date as to when the attachment portion of the Contract was executed.

5

time. Specifically, the system did not satisfy the requirements of the 2001 RFP which complied more with the users' idea of how the CAD system should operate (Broadway Dep. at 83-84; Court File No. 134, Exh. O, Deposition of William Toth ("Toth Dep.") at 202-03; Watkins Dep. at 57; Brumit Dep. at 126-27). The users' complaints were discussed at Plaintiff's Board meeting in March 2003 and it was suggested that Kimball did not thoroughly review the 2002 RFP (Court File No. 134, Exh. Q, p. 2-3). After the Board meeting, Kowalski prepared a list of "Action Items" cataloging OCI's failure to comply with specifications of the 2002 RFP found in the Contract (Court File No. 146, Exh. K, Declaration of Len Kowalski ("Kowalski Decl.") at Exh. 1). In early June 2003 OCI responded in writing to each of the "Action Items" (Court File No. 134, Exh. AA). Kowalski, Watkins, and Nola Brumit ("Brumit") claim OCI never corrected some of the "Action Items" listed by Kowalski (Kowalski Decl. at ¶ 6; Court File No. 146, Exh. L, Affidavit of Nola Brumit ("Brumit Aff.") at ¶¶ 4-5; Court File No. 146, Exh. M, Affidavit of Lee Watkins ("Watkins Aff.") at ¶¶ 5-6). In June 2003, Hines spoke with three members of Plaintiff's Board and a Kimball consultant at a convention in Denver, Colorado about the CAD system not being completed. The members of the Board remember Hines saying OCI would not complete the work it had contracted to do because payments had not been made to OCI (Court File No. 41, Exh. G, Affidavit of Don Allen at ¶ 4; Court File No. 41, Exh. H, Affidavit of Dan Collyer, at ¶ 4; Court File No. 41, Exh. I, Affidavit of Larry Lyda, at ¶ 4). Hines denies making any such statement and claims he requested a meeting at a more appropriate time (Court File No. 134, Exh. AB, Deposition of John J. Hines ("Hines Dep.") at 267-69). Plaintiff's Board held a meeting on July 9, 2003 and by Resolution found that OCI was in breach of the contract and noted OCI was not going to fully perform under the Contract (Court File No. 41, Exh. F). Further, the Board concluded OCI's failure to perform

6

constituted an emergency (*Id.*). After this meeting, Plaintiff procured new hardware and software to replace the OCI CAD software from another company named Positron Public Safety Systems Corporation ("Positron") (Court File No. 134, Exh. AF). Plaintiff claims the costs for the replacement hardware and software exceed the costs of the OCI hardware and software (Court File No. 41, Exh. J, Affidavit of John Stermer, at ¶ 4).

The original Contract called for the work to be completed and ready for a final acceptance review within ninety days after the execution of the Contract. However, the parties agree for purposes of this summary judgment motion a revised schedule was agreed upon allowing OCI ten months to implement the CAD system (Court File No. 41, p. 3, n. 2; Court File No. 54, p. 3; Hines Aff. at ¶¶ 7-8). This revised schedule was agreed upon sometime before May 16, 2002 (Hines Aff. at ¶ 8). OCI contends it would have completed its duties under the Contract on time if Plaintiff had given OCI the data required to test and accept the system (*Id.* at ¶ 31). As late as June 19, 2003 Plaintiff had not given the required data to OCI (*Id.*).

Plaintiff moves for summary judgment on its claims for an injunction requiring OCI to submit to the audit procedures called for in the Contract (Court File No. 78, Second Amended Complaint, Count I); reimbursement of $568,382.43 reflecting payments made to OCI in excess of those due for the hardware, operating system software, and telephony software (*Id.*, Count II); damages for breach of contract (*Id.*, Count III); and on OCI's counter-claim for breach of contract (Court File No. 158, Amended Answer).

### III. DISCUSSION

#### A. Auditing OCI's Books and Records

Plaintiff moves for summary judgment on its claim to audit OCI's books and records. The Contract states:

> [Plaintiff] shall be entitled to audit the books and records of a proposer or any subproposer to the extent that such books and records relate to the performance of such contract or subcontract. Such books and records shall be maintained by the proposer for a period of three (3) years from the date of final payment under the prime contract and by the subproposer for a period of three (3) years from the date of final payment under the subcontract unless a shorter period is otherwise authorized in writing.

(Court File No. 41, Exh. D). Although OCI argues changes were made to the Contract, it does not dispute the above portion of the Contract (*See* Court File No. 158, Amended Answer at ¶ 25). OCI does not address Plaintiff's request to audit OCI's books and records in any of its briefs. Although OCI denies it refused to cooperate with Plaintiff in the completion of an audit in its amended answer (*Id.* at ¶ 26), it does not contest Plaintiff's present contractual right to audit OCI. Further, OCI has not pointed to any sworn testimony raising an issue of whether OCI has already performed its contractual obligations under the audit clause. Therefore, the Court will **GRANT** Plaintiff's motion for summary judgment regarding the audit clause and allow Plaintiff to audit OCI.

### B. Reimbursement of Monies Paid to OCI

Plaintiff next argues it is entitled to reimbursement of monies paid to OCI. The Contract provides:

> [OCI] shall reimburse [Plaintiff] all monies paid to date in the event [OCI] fails to meet or comply with the specifications and requirements agreed to in the OCI Request for Proposal Response Dated March 1, 2002 and attachment "A" dated April 17, 2002.

(Court File No. 41, Exh. A, p. 2). For the following reasons, the Court will **DENY** Plaintiff's motion for summary judgment regarding reimbursement of monies paid to OCI.

Plaintiff argues OCI failed to meet or comply with the requirements of the Contract. To support its contention, Plaintiff points to the following: (1) Hines said OCI would not perform under

8

the Contract, (2) Kowalski's Action Items were not corrected or fulfilled within the ten month window, and (3) Plaintiff's Board found OCI to be in default of its obligations. The Court will address each of these in turn.

### 1. Hines' Statement

Plaintiff points to depositions of three individuals who claim Hines said OCI would not perform under the Contract. Obviously, if OCI had unjustifiably failed to complete performance under the Contract, Hines' alleged statement would have constituted an abandonment of OCI's obligations under the Contract which would allow Plaintiff to terminate the Contract[7] and OCI might then have had to reimburse Plaintiff. However, Hines' denies making such a statement and claims to have requested a meeting with Plaintiff to discuss milestone payments and other issues related to the CAD system. Hines' contentions are supported in part by emails sent to Plaintiff trying to discuss the CAD system and to meet with the Board (Court File 134, Exh. AG). Resolving this factual dispute in favor of OCI, as the Court must, summary judgment would be inappropriate if based on Hines' alleged statement.

### 2. Action Items

Next, Plaintiff points to the Action Items list drafted by Kowalski. Plaintiff argues the Action Items list demonstrate which specifications and requirements OCI failed to meet within the

---

[7] The Contract provides Plaintiff can terminate the Contract if any of the following occur:
. . .
    D.    [OCI] in the judgment of the [Plaintiff] is unnecessarily or willfully delaying the performance and completion of the work.
    E.    [OCI] refuses to proceed with work when and as directed by [Plaintiff].
    F.    [OCI] abandons work.

(Court File No. 41, Exh. B).

ten month window. OCI responds in two principle ways. First, OCI argues it completed any remaining items on the Action Items list and cites to OCI's response to the Action Item List (Court File No. 134, p. 19). However, as Plaintiff adequately details in its supplemental reply brief, OCI's response to the Action Items list clearly shows OCI had not complied with all of the material items in the Action Items list after the ten month window had passed (*See* Court File No. 146, pp. 12-13). Second, OCI argues the CAD system "met the requirements of the 2002 RFP" at the February 2003 demonstration (Court File No. 134, p. 7). Yet, none of the deposition testimony cited by OCI supports OCI's contention.[8] In fact, in one of the depositions cited by OCI to support its supposed compliance, the deponent admits right after the February 2003 demonstration each side reviewed the RFP and OCI admitted it was not in full compliance with the 2002 RFP (Toth Dep. at 210). While it may be true many of the complaints made at the February 2003 demonstration had to do with the CAD system not satisfying the 2001 RFP, OCI has not raised sufficient evidence for a reasonable juror to conclude OCI fully complied with the Contract before the ten month deadline expired.[9]

---

[8] The only deposition testimony that comes close to supporting OCI's contention is that of Mark Broadway, a former OCI employee. In a conversation with an end user complaining about OCI's CAD system, Mr. Broadway stated "I responded...that my CAD did what the [2002 RFP] asked for" (Court File No. 134, Exh. N, Deposition of Mark Broadway at 80). Interestingly, Mr. Broadway only repeats a conversation he had, he does not affirmatively state the CAD system was in compliance with the Contract. Further, Mr. Broadway admitted in the same deposition he had never read the 2002 RFP or OCI's response to the 2002 RFP. He also admitted he was never told the CAD system was in compliance by anyone else (*Id.* at 78-79, 82-83). The 2002 RFP is detailed and according to OCI has about 245 requirements (*See* Court File No. 134, p. 18). Therefore, Mr. Broadway's testimony by itself is not enough for a reasonable juror to conclude the CAD system was compliant with the Contract at the February 2003 demonstration.

[9] OCI does not heavily contest Plaintiff's contention that the CAD system was not in compliance with the Contract within the ten month window. Much of OCI's argument is centered around Plaintiff's failure to provide data causing the system not to be in compliance.

Next, OCI argues even if the Contract requirements were not met within the ten month window, Plaintiff caused the delay by not providing needed data (Court File No. 134, p. 19). In other words, OCI would have complied in time, but Plaintiff kept OCI from doing so. OCI cites several emails, depositions, and statements to prove essential data had not been given to OCI after the ten month deadline. For example, Hines testified that "[t]he only item that was delaying OCI's completion of the [p]roject under the [Contract] was the District's delay in submitting the data required to test and accept the system" (Hines Aff. at ¶ 32). In addition, there is an email from Kowalski written to Plaintiff after the Action Items list was made that says "the critical item at this point...is the data" (Court File No. 134, Exh. T). Further, an email from June 19, 2003 suggests all of the necessary data had not been given to OCI (Court File No. 55, Exh. B). Thus, there is sufficient evidence to conclude, for purposes of this summary judgment motion, OCI could not finish its end of the deal within the ten month window because it did not have the necessary data from Plaintiff. Tennessee law provides "each party to the contract [is] under an implied obligation to restrain from doing any act that would delay or prevent the other party's performance of the contract." *ACG, Inc. v. Southeast Elevator, Inc.*, 912 S.W.2d 163, 168 (Tenn. Ct. App. 1998); *see Wil-Helm Agency v. Lynn*, 618 S.W.2d 748, 751-52 (Tenn. Ct. App. 1981); *Foster & Creighton Co. v. Wilson Contracting Co.*, 579 S.W.2d 422, 426 (Tenn. Ct. App. 1978). Further, if one party interferes, hinders, or prevents the other party from performing "to such an extent as to render the performance difficult" the other party "could treat the contract as broken." *ACG, Inc.* 912 S.W.2d at 168; *see Wil-Helm Agency*, 618 S.W.2d at 752; *accord U.S. v. Peck*, 102 U.S. 64, 64 (1880) (stating "[t]he conduct of one party to a contract, which prevents the other party from performing his part, is an excuse for non-performance"); *Gulf Oil Corp. v. Amer. La. Pipe Line Co.*, 282 F.2d

11

401, 404 (6th Cir. 1960) (stating "[w]here liability under a contract depends upon a condition precedent one cannot avoid his liability by making the performance of the condition precedent impossible, or by preventing it"); *Propst Const. Co. v. N.C. Dept. of Transp.*, 290 S.E.2d 387, 388 (N.C. Ct. App. 1982) (stating "one who prevents the performance of a condition, or makes it impossible by his own act, will not be permitted to take advantage of the nonperformance") (quotation omitted). Therefore, if it is true that OCI could not complete its portion of the bargain before the ten month deadline arrived because of Plaintiff's actions, Plaintiff cannot now complain about OCI's failure to finish in ten months. A harder question is whether the delay in turning over data kept OCI from complying with the specifications and requirements in the Action Items list. Looking at the face of the Action Items list, it does not appear full compliance hinges on the data Plaintiff delayed providing.[10] Further, OCI offers no evidence showing how the lack of data kept it from complying with the requirements and specifications mentioned in the Action Items list. Regardless, since Plaintiff terminated the Contract, the Court cannot determine whether OCI would have complied once the data was turned over.[11]

---

[10] For example, Action Items list number seven says OCI must expand capacity of the CAD system to hold ten preprogrammed messages (Court File 134, Exh. AA). In fact, the Contract does require the CAD system to have the capacity to hold ten preprogrammed messages (Court File No. 41, Exh. A-8b, p. 26). OCI's response stating "we will add the additional functionality" clearly shows OCI was not in full compliance with the Contract (Court File No. 134, Exh. AA). Further, no evidence has been presented to show how the data from Plaintiff would have corrected this issue earlier.

[11] If a reasonable juror found the ten month deadline did not apply, then he or she could also find OCI had past July 2003 to complete performance. In Tennessee, when a contract does not have a specific completion date, an obligor has a reasonable time to perform. *Minor v. Minor*, 863 S.W.2d 51, 54 (Tenn. Ct. App. 1993). "What constitutes a reasonable time...depends on the subject matter of the contract, the situation of the parties, their intention in what they contemplated at the time the contract was made, and the circumstances attending the performance." *Id.* at 54 (quotation omitted). As late as June 19th, some of the needed data to make the CAD system fully operational was not

12

Since the Court believes the ten month deadline is not necessarily enforceable, the next issue is whether Plaintiff had the right to terminate the Contract *and* then demand reimbursement. As discussed *infra* **§ III D 1**, Plaintiff had the right to terminate the Contract. However, it is less clear from the Contract itself whether the parties intended reimbursement to be required when Plaintiff terminated the contract thereby making it impossible for OCI to meet its contractual obligations. Therefore, the Court will turn to Tennessee rules of construction. In Tennessee "[t]he cardinal rule for interpretation of contracts is to ascertain the intention of the parties from the contract as a *whole* and to give effect to that intention consistent with legal principles." *Winfree v. Educators Credit Union*, 900 S.W.2d 285, 289 (Tenn. Ct. App. 1995) (emphasis added); *see also Cocke County Bd. of Highway Comm'rs v. Newport Utils. Board*, 690 S.W.2d 231, 237 (Tenn. 1985) (stating "[i]t is the universal rule that a contract must be viewed from beginning to end and all its terms must pass in review, for one clause may modify, limit or illuminate another."); *Dearing v. Brush Creek Coal Co.*, 186 S.W.2d 329, 331 (Tenn. 1945) (stating "primary and fundamental rule to which all others relate and must yield is that the intention of the parties gathered from the whole instrument, taken in connection with surrounding circumstances must control") (quotation omitted). Further, "[a]ll provisions of a contract should be construed as in harmony with each other, if such construction can be reasonably made, so as to avoid repugnancy between the several provisions of a single contract."

---

available. It also appears Plaintiff might have been delinquent in payments owed to OCI making it more reasonable for OCI to proceed at a slower pace (*See* Court File No. 134, pp. 20-22). Further, at least some of Plaintiff's problems with the CAD system stemmed from complaints of the users. Even though OCI was not necessarily obligated to change the CAD system to resolve the user's complaints, OCI made a good faith effort to do so. Lastly, a substantial portion of the specifications and requirements under the Contract were satisfied by OCI making it more reasonable to allow OCI more time to finish.

13

*Park Place Center Enters., Inc. v. Park Place Mall Assoc., L.P.*, 836 S.W.2d 113, 116 (Tenn. Ct. App. 1992). Also, "[i]n construing contracts, the courts must look to the language contained in the instrument and to the intention of the parties and impose a construction which is fair and reasonable." *ACG, Inc.* 912 S.W.2d at 168.

Taking the current contract as a whole, construing the provisions in harmony with each other, and considering the most fair and reasonable construction, the Court believes the parties did not intend Plaintiff to be reimbursed under these circumstances. As already discussed, Plaintiff possibly kept OCI from performing within the ten month deadline, therefore, under Tennessee law, a reasonable time to complete performance should have been given to OCI. Although Plaintiff has the right to exercise its "judgment" when deciding to terminate the Contract, if doing so prevented OCI from completing performance within a reasonable time after it had already completed substantial performance, requiring reimbursement would be unreasonable and unfair. Accordingly, the Court cannot grant summary judgment on Plaintiff's reimbursement claim based on the Action Items list.

### 3. Board's Decision

Plaintiff argues its Board found OCI to be in default and this finding should be "accepted as the final word" because it is a municipal corporation (Court File No. 146, p. 11). This argument was first raised in Plaintiff's supplemental reply brief, therefore, the Court will not address it.

### C. Breach of Contract

Since the Court believes a reasonable juror could find OCI was prevented from fully complying with the Contract by Plaintiff, it will **DENY** Plaintiff's motion for summary judgment

14

on Count III of its complaint seeking damages for breach of contract.

### D. Counter-Claim for Breach of Contract

Plaintiff also moves for summary judgment on OCI's counter-claim for breach of contract. OCI contends Plaintiff breached the Contract when it terminated the Contract in its July 2003 Board meeting (Court File No. 54, p. 12; Court File No. 134, pp. 18-20) and when Plaintiff refused to pay OCI for completed milestones (Court File No. 134, p. 21). Plaintiff contends OCI's claims have no merit (Court File No. 41, p. 11; Court File No. 146, pp. 18-19).

#### 1. Did Plaintiff Breach When it Terminated the Contract?

The Contract has a termination clause which provides:

The [Plaintiff] shall have the right to terminate a contract or part thereof before the work is completed in the event:
- A. Previous unknown circumstances arise making it desirable in the public interest to void the contract.
- B. [OCI] is not adequately complying with the specifications.
- C. [OCI] refuses, neglects, or fails to supply properly trained or skilled supervisory personnel and/or workers or proper equipment.
- D. [OCI] in the judgment of [Plaintiff] is unnecessarily or wilfully delaying the performance and completion of the work.
- E. [OCI] refuses to proceed with work when and as directed by [Plaintiff].
- F. [OCI] abandons work.

(Court File No. 146, Exh. B). As already discussed above there are material questions of fact concerning OCI's abandonment and/or delay in fulfilling its obligations and Plaintiff's possible delay in getting necessary information to OCI. Accordingly, a reasonable juror could find Plaintiff breached the Contract if it terminated the Contract under subclauses B, E, or F. Further, Plaintiff does not rely on subclause C as a justification for terminating the Contract. Therefore, the remaining

15

subclauses are A and D. Since the Court concludes subclause D allowed Plaintiff to terminate the Contract, the Court will not address subclause A.

Unlike the other subclauses, subclause D gives Plaintiff subjective leeway in terminating the Contract. Under subclause D, Plaintiff could terminate the Contract if "*in the judgment of [Plaintiff]*" OCI was "unnecessarily or wilfully delaying the performance and completion of the work" (*Id.* (emphasis added)). Plaintiff argues it had the discretion to terminate and its "judgment is dispositive of the issue" (Court File No. 146, p. 19). OCI responds by arguing Plaintiff exercised its discretion unreasonably and in bad faith. The Tennessee Supreme Court stated:

> In Tennessee...there is implied in every contract a duty of good faith and fair dealing in its performance and enforcement.... What this duty consists of, however, depends upon the individual contract in each case. In construing contracts, courts look to the language of the instrument and to the intention of the parties, and impose a construction which is fair and reasonable. ...Performance of a contract according to its terms cannot be characterized as bad faith.

*Wallace v. Nat'l Bank of Commerce*, 938 S.W.2d 684, 686-87 (Tenn. 1996) (citations omitted). Therefore, if OCI raises sufficient evidence to show Plaintiff's action in terminating the Contract was not in accordance with the Contract's terms (*i.e.* not in good faith), summary judgment would be improper.

OCI argues there is a genuine issue as to whether Plaintiff's decision to terminate the Contract was made in good faith (Court File No. 134, p. 22-25). OCI contends Plaintiff's reliance on Kowalski in determining to terminate the Contract demonstrates a lack of good faith because Kowalski did not draft the 2002 RFP or negotiate the Contract. Stated differently, Kowalski was not qualified to give an opinion to Plaintiff's Board so the Board should not have relied on Kowalski. Instead of relying on Kowalski, OCI argues Plaintiff's Board should have reviewed the

16

2002 RFP and compared it to the CAD system that existed at the time. Also, OCI contends Plaintiff's Board refused to communicate its concerns to OCI when it was determining whether or not to terminate and Plaintiff did not let OCI explain itself. Lastly, OCI argues bad faith is present here because Plaintiff had not complied with its own obligations in providing data to OCI and Plaintiff was looking for a way out of the contract because it had a competing offer from Positron.

After considering all of the facts in the best light possible for OCI, the Court believes summary judgment is proper. The Contract clearly gives Plaintiff some subjective leeway in determining whether OCI was unnecessarily or intentionally delaying the implementation of the CAD system. Over four months after the ten month deadline, Plaintiff still did not have the new CAD system in place. This is not a situation where one day after a deadline, one party blindly ignores the mitigating circumstances and pulls out. Instead, Plaintiff worked with OCI after the deadline passed. Further, OCI left Plaintiff's premises in late March before certain issues with the CAD system had been settled thereby leaving an impression it was delaying and/or abandoning its work.[12]

As for Plaintiff's reliance on Kowalski, OCI has not pointed to any evidence showing Kowalski was not qualified to make the Action Items list or to advise Plaintiff on the CAD system. Although Kowalski was not involved in drafting the RFP or in the negotiation of the Contract, OCI

---

[12] OCI states in its supplemental response brief "[e]ven prior to the July 9, 2003 meeting, [Plaintiff] had taken steps to prevent OCI personnel from accessing [Plaintiff's] facilities and computers" (Court File No. 134, p. 18). The only sworn testimony cited by OCI on this issue is the deposition of Sara Haase (Court File No. 134, Exh. E; *see* Court File No. 134, p. 13). However, Ms. Haase states OCI was locked out of the computers on the morning of July 9, 2003 right before the Board meeting (*Id.* at 109-10). She does not state OCI was locked out of the facilities.

17

Case 1:04-cv-00007   Document 164   Filed 09/30/05   Page 17 of 20   PageID #: 362

has not given any reason why a careful study of the written Contract would be insufficient for Kowalski to give an informed and reliable opinion to Plaintiff's Board. In other words, Kowalski appears to be a professional whom Plaintiff could reasonably rely on even if he did not draft the RFP or negotiate the Contract. Next, although Plaintiff may not have supplied OCI with some necessary data, the data was not required to correct each material item on the Action Items list. Also, even though OCI may not have been allowed to formally appear before the Board to explain itself, it was given a chance to respond to the Action Items list. When OCI made its response in early June 2003, it only made things worse for OCI because the response showed more work had to be done. In addition, even if OCI had been given a chance to explain itself, it appears OCI would have focused on the issue of milestone payments which Plaintiff's Board, rightly or wrongly, had already decided OCI was not yet entitled to.

Lastly, OCI's argument that Plaintiff was acting in bad faith because Plaintiff just wanted to go with Positron is unconvincing. Plaintiff had several indicators showing OCI was not going to comply with the Contract in a timely manner. It considered its options and decided to go with another company. Whether such a decision was the best decision or the one with the least drawbacks is not for this Court to determine. As already stated above, "Performance of a contract according to its terms cannot be characterized as bad faith." *Id.* at 687. Plaintiff had the right to use its judgment in terminating the Contract. Without more facts, the Court cannot say enough evidence has been raised for a reasonable juror to conclude Plaintiff's decision to terminate was made in bad faith. Accordingly, the Court will **GRANT IN PART** Plaintiff's motion for summary judgment on OCI's counter-claim with respect to the termination breach.

**2. Did Plaintiff Breach When it Refused to Make Milestone**

18

### Payments?

The Contract required Plaintiff to pay OCI in installments. When a milestone was reached, OCI would invoice Plaintiff (*See* Court File No. 134, Exh. AR). According to Plaintiff's Board, only eighty-eight percent of the contract price was paid to OCI (Court File No. 134, Exh. Y). Since the Court concluded above Plaintiff could terminate the Contract before work was completed, Plaintiff is not required to pay the remaining five percent which was to be paid upon final system cutover (*See* Court File No. 158, Amended Complaint, Counter-Claim, at ¶ 23). However, the remaining seven percent is still at issue. OCI has produced invoices and sworn testimony supporting its contention that milestones have been completed but Plaintiff has not made payment. Although Plaintiff argues it paid any outstanding invoices (Court File No. 146, p. 20), it only produces evidence of paying one out of the four invoices presented by OCI. Therefore, the Court concludes sufficient evidence has been raised in determining whether Plaintiff breached the contract by not paying OCI for completed milestones. Thus, the Court will **DENY IN PART** Plaintiff's motion for summary judgment with respect to the completed milestone portion of OCI's counter-claim for breach of contract.

## IV. CONCLUSION

For the reasons already stated, Plaintiff's motion for summary judgment will be **GRANTED IN PART** and **DENIED IN PART**. The Court will (1) **GRANT** Plaintiff's motion for summary judgment regarding the audit clause and allow Plaintiff to audit OCI; (2) **DENY** Plaintiff's motion for summary judgment on the reimbursement and breach of contract claims; (3) **GRANT IN PART**

19

Plaintiff's motion for summary judgment on OCI's counter-claim for breach of contract regarding Plaintiff's breach in terminating the Contract; and (4) **DENY IN PART** Plaintiff's motion for summary judgment on OCI's counter-claim for breach of contract regarding Plaintiff's breach in not paying OCI for completed milestones.

An order shall enter.

        **/s/**
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**