UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| HAMILTON COUNTY EMERGENCY COMMUNICATIONS DISTRICT, )<br><br>Plaintiff, )<br><br>v. )<br><br>ORBACOM COMMUNICATIONS INTEGRATOR CORPORATION, ORBACOM SYSTEMS, INC., OCI LIQUIDATING LLC, IPC INFORMATION SYSTEMS HOLDING, INC., HERBERT COHEN, and RONALD NEWFIELD, )<br><br>Defendants. ) | No. 1:04-CV-7<br><br>Judge Curtis L. Collier |

# M E M O R A N D U M

The parties, Defendants Orbacom Communications Integrator Corp.'s ("OCI"), OCI

Liquidating LLC ("OCIL"), Herbert Cohen ("Cohen"), and Ronald Newfield's ("Newfield")

(collectively "Cohen Defendants"), Orbacom Systems, Inc. ("OSI") and IPC Information Systems

Holding, Inc.'s ("IPC").[1]  and Plaintiff Hamilton County Emergency Communications District's

("Plaintiff") have filed a large number of motions in this lawsuit.  The Court, having disposed of all

of the previous motions for summary judgement filed by the parties[2], has just two remaining motion

_____

[1] The Court will collectively refer to OCI, OCIL, Cohen, Newfield, OSI, and IPC as "Defendants".

[2]The Court previously disposed of five motions for summary judgment filed by the parties in this case (*See* Court File Nos. 164, 165, 271, 287, and 288).

for summary judgment (Court File No 240 filed by Cohen Defendants) and Court File No. 238 filed by OSI and IPC.)

These two motions address Plaintiff's fraudulent concealment and civil conspiracy claims (Count VI of the Fourth Amended Complaint, (Court File No. 235)), and Plaintiff's claims for intentional interference with contractual relationships and civil conspiracy (Count VII of the Fourth Amended Complaint). Defendants filed briefs in support of their motions (Court File Nos. 239, 241). Plaintiff filed a brief in response (Court File No. 270) and Defendants filed reply briefs (Court File Nos. 279, 280).

After careful consideration of the above motions and briefs, and for the following reasons, the Court will (1) **GRANT** OSI and IPC's motion for summary judgment (Court File No. 238), (2) **GRANT IN PART** and **DENY IN PART** the Cohen Defendants' motion for summary judgment (Court File No. 240). With respect to OSI's and IPC's motion for summary judgment the Court will **DISMISS** all claims in Counts VI and VII of the Fourth Amended Complaint made against OSI. With respect to the Cohen Defendants' motion for summary judgment, the Court will **DISMISS** all conspiracy claims against Cohen but will allow Plaintiff's remaining claims against OCI and Cohen in Counts VI and VII of the Fourth Amended Complaint to proceed to trial.


I. <u>**STANDARD OF REVIEW**</u>

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the burden is on the moving party to conclusively show no genuine issue of

material fact exists, *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003), and the Court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). However, the nonmoving party is not entitled to a trial merely on the basis of allegations, but must come forward with some significant probative evidence to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Id.* at 323, 106 S.Ct. at 2552.

The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question, but does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003). The standard for summary judgment mirrors the standard for directed verdict. *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511. The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52, 106 S. Ct. at 2512. There must be some probative evidence from which the jury could reasonably find for the nonmoving party. If the Court concludes a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Id.*; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

3

## II.    RELEVANT FACTS

The Court has stated the essential facts giving rise to this litigation in its previously issued opinions.  For purposes of this motion, the Court sets forth the following.

Plaintiff is a public Tennessee corporation charged with the statutory responsibility of creating and managing the emergency communications system for the citizens of Hamilton County, Tennessee (Court File No. 235, Fourth Amended Complaint, at ¶ 3; *see* Court File No. 242, Answer to Fourth Amended Complaint, at ¶ 3).  Plaintiff "is engaged in a critical public safety function that requires effective receipt, processing, and communication of requests for emergency police, fire, and ambulance services" (*Id.*).  In early 2001, Plaintiff decided to replace its telephony and computer assisted dispatch ("CAD") system.[3]  To start the process, Plaintiff prepared a Request for Proposals ("RFP") which was distributed to potential vendors (Court File No. 134, Exh. A).  Plaintiff was not satisfied with the responses it received from potential vendors, so it retained a consulting firm, L. Robert Kimball & Associates ("Kimball") to review the original RFP (hereinafter "2001 RFP") along with the vendors' responses to the 2001 RFP so Kimball could recommend a course of action (Court File No. 270, Exh. 1; *see also* Court File No. 134, Exh. B, Deposition of Mark Martorano ("Martorano Dep.") at 11-23; Court File No. 134, Exh. C, Terry Johnston Deposition ("Johnston Dep.") at 15-17).

Kimball assigned two of its employees, Terry Johnston ("Johnston") and Mark Martorano ("Martorano"), to complete this review process (*See* Court File No. 270,  Exh. 2).  Johnston and Martorano reviewed the 2001 RFP and the responses to the 2001 RFP and recommended Kimball

---

[3] A CAD system is designed to permit emergency communication operators to efficiently dispatch calls to appropriate response personnel and is important to the identification of the location of emergency callers using mobile telephones (Court File No. 41, p. 3).

should be hired as a consultant to prepare a new RFP and review the responses to the new RFP (*Id.*;

Court File No. 270, Exh. 4). The recommendation was accepted by Plaintiff (Court File No. 270,

Exh. 5). Johnston was the principal drafter of the new RFP, which was sent out in 2002 (hereinafter

"2002 RFP") (Court File No. 241, p. 1; Court File No. 270, p. 5). At some point, Johnston spoke

with OCI about the 2002 RFP (Court File No. 270, Exh. 6, Deposition of William Toth, at 136-139).

OCI, along with other potential vendors, submitted a proposal in response to the 2002 RFP.

Johnston recommended to Plaintiff the OCI proposal should be accepted (Court File No. 270, Exh.

7). In March 2002, Plaintiff's Board of Directors ("Board") voted to accept OCI's proposal and

authorized Kimball to assist Plaintiff in negotiating a final agreement (Court File No. 134, Exh. D,

Nola Brumit Deposition ("Brumit Dep.") at 37, 39-40; Martorano Dep. at pp. 33-36; Court File No.

134, Exh. H; Court File No. 270, Exh. 8, Deposition of William Loftis, at pp. 24-26). Eventually,

on March 23, 2002 Plaintiff and OCI signed an agreement (hereinafter "Contract") consisting

primarily of OCI's response to Plaintiff's 2002 RFP (Court File No. 41, Exh. A). The Contract

required OCI to provide computer hardware and operating system software on which the CAD

system would operate (Court File No. 108). Further, Plaintiff agreed to make periodic payments

based on the completion of specified "milestones" (*See* Contract, Attachment A). After the parties

entered into the Contract, Plaintiff extended their contract with Kimball so Kimball could assist

Plaintiff in implementing the CAD system (Court File No. 270, Exh. 12). One of Kimball's

responsibilities was to review OCI invoices and approve or deny payment for those invoices (*See*

Court File No. 270, Exh. 13).

     The project proceeded in 2002, albeit with delays, beginning with the installation of

computer hardware and the telephony software. According to John J. Hines ("Hines"), the president

of OCI, the CAD software was installed and invoiced to Plaintiff by December 23, 2002 (Court File No. 55, Affidavit of John J. Hines ("Hines Aff.") at ¶ 16). In 2002, Johnston authorized several payments to OCI for completion of certain milestones. However, Johnston did not verify whether the installation of certain hardware and software for which OCI billed was consistent with the requirements of the Contract (Court File No. 270, Exh. 14, Affidavit of Frederick L. Hitchcock ("Hitchcock Aff") at ¶ 7). Instead, Johnston would call OCI and ask it whether the hardware and software had been delivered and the bill should be paid (*Id.*).

At the end of 2002, all employees of OCI became employees of OSI except for Hines (Court File No. 270, Exh. 19, Deposition of Herbert Cohen, pp. 80-81). In December 2002, Johnston left his employment with Kimball and in 2003 he began working with Advanced Concepts, Inc. (Court File No. 270, Exhibit 3, Johnston Dep. at 8, 107). In January 2003, new consultants from Kimball, Leonard Kowalski ("Kowalski") and Ervin Dinsmore ("Dinsmore"), took over the project (Court File No. 146, p. 7; Court File No. 134, p. 6; Hines Aff. at ¶ 19). Later that month, Kowalski advised Plaintiff not to make any additional payments to OCI because the payments had proceeded ahead of implementation (Court File No. 134, Exh. L). Plaintiff alleges it took Kowalski's advice and refused to make some milestone payments despite the completion of some milestones (Court File No. 134, Exh. AJ; Court File No. 134, p. 7). In February 2003, OCI attempted to demonstrate the functionality of its CAD system to the individuals who would use the system. The demonstration went poorly and the users became upset because the CAD system did not meet their expectations (Court File No. 134, Exh. N, Deposition of Mark Broadway ("Broadway Dep.") at 75-76, 79-80).

Plaintiff filed suit against OCI on December 12, 2003 seeking injunctive relief, reimbursement of monies paid to OCI, and breach of contract damages (Court File No. 1, Complaint,

at pp. 6-9). On November 23, 2005, Plaintiff filed a fourth amended complaint adding additional claims for fraudulent concealment, civil conspiracy, and intentional interference with contractual relations (Court File No. 235, Fourth Amended Complaint, Counts VI and VII).

In 2004 IPC became interested in acquiring OSI and software products developed by OCI. In the summer of 2004, IPC approached Cohen, the majority shareholder of both OCI and OSI, about acquiring OSI (Court File No. 215, Exh. E, Affidavit of John McSherry ("McSherry Aff.") at ¶ 5). Initially, Cohen was not interested but he was willing to entertain IPC's overtures about a possible sale (*Id.*). Extensive negotiations ensued and IPC conducted due diligence of OSI (*Id.* at ¶¶ 5-6). IPC discovered certain software used in the OSI business was actually owned by OCI and licensed to OSI in return for a royalty payment (*Id.* at ¶ 6). IPC made it clear a key component of the transaction was the acquisition of rights to the OCI software, which meant OSI had to acquire these rights prior to IPC's purchase of OSI. In doing so, IPC would be able to acquire the OCI software without having to make royalty payments to OCI (*Id.*). Cohen agreed, and told IPC that OSI and OCI were going to reorganize (*Id.* at ¶ 7). IPC then tentatively agreed it would make an initial payment of $11,000,000 ($3,000,000 would be held back to cover liabilities), and possible additional payments up to $7,000,000 depending on the financial performance of OSI after the sale (Court File No. 215, Exh. G).

On October 1, 2004, OCI and OSI entered into an Agreement and Plan of Reorganization ("Plan of Reorganization") (Court File No. 215, Exh. H). The Plan of Reorganization provided OCI would liquidate and merge with OCI Liquidating LLC ("OCIL") after OCI's stockholders approved the Plan of Reorganization (*Id.* at p. 4). Further, OCI was to transfer substantially all of its assets to OSI but OCI was to retain its own liabilities (*Id.* at pp. 1-2). In return, OCI was to receive 50%

of the issued and outstanding shares of OSI (*Id.* at p. 1).

On March 3, 2005 at a deposition, OCI's attorney asked Johnston if he had been compensated by OCI after 1999 (Court File No. 270, Exh. 3, Johnston Dep. at 107). Johnston answered he had not received any compensation (*Id.*). In reality, Johnston received several payments from OCI from 1999 to 2005 (Court File No. 270, Exh. 17; *see also* Court File No. 241, p. 2; Court File No. 270, pp. 8-9).[4] According to the Cohen Defendants, these payments were for Johnston's services as a software consultant (Court File No. 241, p. 3). Few records exist with respect to the payments made to Johnston in 2002 (Court File No. 270, p. 11; Court File No. 280, p. 9). However, there is a record of a $13,500 payment to Johnston in September 2002 which indicates it was made for "Hamilton County" (Court File No. 270, Exh. 20, p. 8). Hines was familiar with Johnston's arrangement with OCI and approved all payments to Johnston (Court File No. 238, Exh. F, Deposition of William Toth, at pp. 60-61; Court File No. 238, Exh. G, Deposition of Clayton Gilham, at p. 95). Hines was the President of OCI and a sales manager at OSI (Hines Aff. ¶ 1; Court File No. 270, Exh. 19, Deposition of Herbert Cohen, at 80-81). OSI began paying Johnston in February 2003 (Court File No. 238, Exh. A, Affidavit of Debra Stefaniak, at ¶ 4).

## III.  DISCUSSION

### A.  Fraudulent Concealment and Conspiracy

#### 1.  Fraudulent Concealment

Plaintiff claims OCI and OSI should be held liable for fraudulent concealment because (1)

---

[4] Many of the payments made to Johnston were made to a corporation named Space Coast Mind, Body & Spirit, Inc.(Court File No. 270, July 27, 2005 Deposition of Terry Johnston, at 61-63).

it was never disclosed to Plaintiff OCI and OSI compensated Johnston after 1999; (2) OCI and OSI did not disclose to Plaintiff the workstations had Pentium processors; and (3) OCI and OSI failed to advise Plaintiff OCI transitioned its employees to OSI (*See* Court File No. 241, pp. 12-13; Court File No. 270, p. 12). Defendants now move for summary judgment on these claims.

In considering this issue, we have the benefit of a fairly recent opinion from the United States Court of Appeals for the Sixth Circuit ("Sixth Circuit") on the tort of fraudulent concealment in Tennessee. That opinion summarizes the tort in this manner:

> As the Tennessee Supreme Court explained, the tort of fraudulent concealment is committed when a party who has a duty to disclose a known fact or condition fails to do so, and another party reasonably relies upon the resulting misrepresentation, thereby suffering injury. The duty to disclose arises in three distinct circumstances: (1) where there is a previous definite fiduciary relation between the parties, (2) where it appears one or each of the parties to the contract expressly reposes a trust and confidence in the other, and (3) where the contract or transaction is intrinsically fiduciary and calls for perfect good faith.

*Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 571 (6th Cir. 2003) (internal quotations and citations omitted). Defendants argue there was no fiduciary, confidential, or intrinsically fiduciary relationship in this case that would require OCI to make any disclosures.

### (a)     Duty to Disclose

Neither party argues, nor does this Court find, the presence of a fiduciary relationship. Therefore, a duty to disclose will only arise if the Court is able to find a confidential relationship or an intrinsically fiduciary relationship.

The Court can easily dispose of Plaintiff's argument the contract between OCI and Plaintiff created an intrinsically fiduciary relationship. The example of a contract which creates an intrinsically fiduciary relationship given by Tennessee courts is a "contract of insurance." *See Macon County Livestock Market, Inc. v. Kentucky State Bank, Inc.*, 724 S.W.2d 343, 349 (Tenn. Ct.

9

App. 1995) (citing *Domestic Sewing Mach. Co. v. Jackson*, 83 Tenn. 418, 424-25 (Tenn. 1885)). The contract in this case obviously is not a contract of insurance. Although the Contract affected the safety of the citizens of Hamilton County, the Court easily concludes the Contract was not intrinsically fiduciary.

However, the question of a confidential relationship is not as simple.. "Tennessee law defines a confidential relationship as one created when confidence is placed by one on the other and the recipient of that confidence is dominant personality with the ability because of that confidence to influence and exercise dominion over the weaker or dominated party." *Shah*, 338 F.3d at 571 (quotations and citations omitted). Plaintiff, through the services of Kimball, negotiated and eventually reached an agreement with OCI. Although Plaintiff was limited in its knowledge of CAD systems, with Kimball's assistance, Plaintiff was not a weaker or dominated party. As such, under normal circumstances the Court would simply conclude the Contract was negotiated and entered into at arms' length. However, other circumstances are present here that will not allow the Court to make such a conclusion.

Plaintiff alleges OCI was paying Johnston, the Kimball employee assigned to assist Plaintiff, to ensure OCI's proposal was accepted. Once OCI's proposal was accepted, Plaintiffs also allege OCI paid Johnston to negotiate a contract favorable to OCI. As evidence of these improper payments, Plaintiff has presented to the Court a payment OCI made to Johnston with the notation "Hamilton County." This piece of evidence strongly suggests OCI was in fact making improper payments to Johnston while Johnston was employed by Kimball and working on the "inside" with Plaintiff. Because OCI made these payments to Johnston, Johnston, and his employer Kimball, could be viewed as OCI's agent instead of Plaintiff's agent. Plaintiff had little or no experience with

10

CAD software and/or hardware. That is why Plaintiff hired and trusted Kimball to draft and send out the 2002 RFP when its initial RFP returned unsatisfactory results. Further, Plaintiff trusted Kimball's recommendation to accept OCI's proposal and allowed Kimball to finalize a contract with OCI. With Kimball (via its employee Johnston) acting in conjunction with OCI rather than acting solely on Plaintiff's behalf, Plaintiff could be considered a dominated party. Thus, assuming OCI improperly paid Johnston, Plaintiff has presented sufficient evidence for a reasonable jury to find OCI, through Kimball, dominated Plaintiff and therefore had a duty to disclose known facts to Plaintiff. However, the same is not true for OSI. Without the payments to Johnston, no relationship existed between Kimball and Plaintiff that would require OCI and/or OSI to disclose known facts to Plaintiff. Since OSI was not involved in making any payments to Johnston until 2003, it could not have made Kimball its agent (via Johnston) because Johnston left Kimball in December 2002. Consequently, OSI had no confidential relationship and therefore no duty to disclose known facts to Plaintiff. This conclusion is especially warranted because OSI, unlike OCI, was never contractually involved with Plaintiff. Accordingly, the Court will **GRANT** OSI's and IPC's motion for summary judgment on Plaintiff's fraudulent concealment claim against OSI.

### (b)      Known Fact, Reasonable Reliance, and Resulting Injury

Since the evidence is sufficient to permit the inference Plaintiff had a confidential relationship with OCI, the Court must now ask whether OCI failed to disclose a known fact and whether Plaintiff reasonably relied upon the resulting misrepresentation, thereby suffering injury. *See Shah*, 338 F.3d at 571. As previously mentioned, Plaintiff points to the following three failures to support its fraudulent concealment claim: (1) OCI  never disclosed to Plaintiff it compensated Johnston after 1999; (2) OCI did not disclose to Plaintiff the workstations had Pentium processors;

11

and (3) OCI failed to advise Plaintiff OCI had transitioned its employees to OSI. Each of these facts were clearly known to OCI. Further, Plaintiff probably relied on the resulting representations. For instance, if OCI knew the workstations had Pentium processors, it likely would not have made certain milestone payments that it made to OCI. Also, the Cohen Defendants have not presented the Court with any reason why Plaintiff should have known about the above facts.[5] Therefore, any reliance on the resulting misrepresentations may have been reasonable. Finally, Plaintiff may be able to proved it was injured because of OCI's failure to disclose each of the above facts. For example, if Plaintiff knew Johnston was being paid by OCI in 2002 it may have hired another consulting firm to negotiate a contract more favorable to its interests.

In light of the above conclusions, the Court will **DENY** the Cohen Defendant's motion for summary judgment on Plaintiff's fraudulent concealment claim against OCI.

### 2. Civil Conspiracy

"The elements of a cause of action for civil conspiracy under Tennessee law are as follows: (1) a common design between two or more persons; (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means; (3) an overt act in furtherance of the conspiracy; and (4) resulting injury." *Morgan v. Brush Wellman, Inc.*, 165 F. Supp. 2d 704, 721 (E.D. Tenn. 2001). Plaintiff claims OCI, OSI, Cohen, and Johnston "were engaged in a civil conspiracy in furtherance of the fraudulent concealment" (*i.e.* an unlawful purpose) (Court File No. 235, Fourth Amended Complaint, ¶ 111). Defendants make the following arguments in support of their motions for summary judgment on Plaintiff's civil conspiracy claim:

---

[5] In a previous memorandum, the Court explained why it would have been reasonable for Plaintiff not to discover the Pentium processors (Court File No. 287, pp. 12-15).

(1) Cohen could not have been involved in a civil conspiracy with OCI or OSI because Tennessee has adopted the "intracorporate immunity doctrine";

(2) OCI and OSI are incapable of conspiring together because of the "intracorporate immunity doctrine";

(3) There is no evidence Cohen, Johnston, OCI, or OSI engaged in a civil conspiracy; and

(4) OSI did not start making payments to Johnston until 2003.

The Court will address each of the Defendants' arguments in turn.

### (a) Intracorporate Immunity

In Tennessee, "there can be no actionable claim of conspiracy where the conspiratorial conduct alleged is essentially a single act by a single corporation acting through its officers, directors, employees and other agents, *each acting within the scope of his or her employment*. *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 703-04 (Tenn. 2002) (emphasis in original). Cohen was an officer of both OCI and OSI. Therefore, if he was acting in the course and scope of his employment he could not have conspired with OCI or OSI. Plaintiff is willing to agree Cohen was acting within the course and scope of his employment.[6] Since both sides agree Cohen was acting in the course and scope of his employment, the Court will **GRANT** the Cohen Defendants' motion for summary judgment on Plaintiff's claim for civil conspiracy against Cohen based on the underlying tort of fraudulent concealment.

Next, the Cohen Defendants assert OCI and OSI are so closely related they could not have

---

[6] Plaintiff states in its response brief "[i]f it is the Defendants' position that Mr. Cohen was acting on behalf of the two corporations within the scope of his employment . . . Mr. Cohen's actions need not arise out of a theory of civil conspiracy" (Court File No. 270, pp. 16-17). The Cohen Defendants hold the position that Cohen was acting within the course and scope of his employment (*See* Court File No. 241, p. 18).

13

conspired with each other. In support of their argument, the Cohen Defendants cite to *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984). In *Copperweld*, the Supreme Court applied the doctrine of intracorporate conspiracy immunity in the antitrust context and held a parent corporation and its wholly owned subsidiary are incapable of conspiring under Section 1 of the Sherman Act. *Id.* at 770-71. The Cohen Defendants' reliance on *Copperweld* is misplaced because OSI is not the parent company of OCI. Although OCI and OSI are related, they cannot be considered a single corporation for purposes of the doctrine of intracorporate conspiracy immunity. As Plaintiff points out, one of OCI's principal roles was to sell CAD software. OSI did not own the CAD software. In fact, OSI made royalty payments to OCI so it could use the CAD software. Also, OCI and OSI did not have an identical ownership structure. Conclusive evidence of the distinction between the two companies is the fact that it was necessary for a reorganization of OSI and OCI as a prerequisite to IPC's acquisition of OCI instead of IPC simply purchasing both OSI and OCI. In short, OCI and OSI are not immune from civil conspiracy liability based on the doctrine of intracorporate conspiracy immunity.

### (b)    Lack of Evidence

Defendants contend there is a lack of evidence of any conspiracy between Johnston, OCI, OSI, and Cohen. Viewing the facts in the light most favorable to Plaintiff, the Court cannot agree with the exception of OSI.[7] OCI admits to paying Johnston at the same time Johnston was writing Plaintiff's 2002 RFP, negotiating a contract with OCI on behalf of Plaintiff, and advising Plaintiff on OCI's compliance with the Contract in his position with Kimball. While these payments may

---

[7] As explained in section **III (A)(2)(a)**, the parties agree Cohen was acting in the course and scope of his employment and therefore could not conspire with OCI or OSI. The Court will discuss OSI in section **III (A)(2)(c)**.

have been for consulting services unrelated to Plaintiff, there is enough conflicting evidence to allow Plaintiff's civil conspiracy claim to proceed to trial. Most significantly, in September 2002, OCI wrote Johnston a check with the notation of "Hamilton County." This suggests Johnston was not being paid for unrelated consulting services but instead was being paid to work on OCI's behalf in connection with his work for Plaintiff. As soon as Johnston left Kimball, Kowalski found OCI was not in compliance with the Contract. If Johnston had been acting solely in Plaintiff's best interests while employed by Kimball, certain facts about OCI's compliance with the Contract would most likely have been disclosed to Plaintiff earlier. Thus, there may have been a "common design" between OCI and Johnston to fraudulently conceal known facts from Plaintiff. The "overt acts" in furtherance of the common design were the payments made to Johnston in 2002. The injury resulting from OCI's actions is evident. For example, if Johnston authorized payments to OCI even though OCI had not completed its work, Plaintiff overpaid OCI. Although the Defendants have presented conflicting evidence, Plaintiff has pointed to enough evidence for Plaintiff's civil conspiracy claim to proceed to trial. Accordingly, the Court will **DENY** the Cohen Defendants' motion for summary judgment on Plaintiff's conspiracy claim against OCI based on fraudulent concealment.

### (c)     OSI

OSI and IPC assert OSI could not have been involved in a conspiracy to conceal anything from Plaintiff because OSI did not start paying Johnston until 2003, after Johnston left Kimball and ceased working with Plaintiff. Since Plaintiff cannot tie the improper 2002 payments to OSI, there is insufficient evidence for Plaintiff's fraudulent conspiracy claim against OSI to proceed to trial. Both parties agree OSI did not make any payments to Johnston until 2003, *after* Johnston left

Kimball. Unlike the OCI payment to Johnston with a notation of "Hamilton County" there is no evidence any payments from OSI to Johnston were improper or designed to benefit OSI at the expense of Plaintiff. Plaintiff attempts to connect OSI to the 2002 payments through Hines and Toth but the connection is weak at best. Hines approved the 2002 payments made to Johnston. However, at all relevant times Hines was the President of OCI. Although Hines also held a position with OSI at that time, if he was approving improper payments to Johnston, the evidence suggest he was doing so in his role as President of OCI. OSI had no contractual relationship with Plaintiff and was not implementing the CAD system for Plaintiff. Therefore, the payments to Johnston logically would not have benefitted OSI.

As for Toth, his role in the pre-2003 payments is unclear. From the evidence, Toth, an OSI employee, had some contact with Johnston during 2002 (*See* Court File No. 238, Exh. G, Deposition of Clay Gilham, at pp. 94-97). However, there is no evidence, direct or indirect, Toth's contact with Johnston was part of a conspiracy to conceal anything from Plaintiff. While it is true Toth was instrumental in putting Pentium processors in the workstations (*See* Court File No. 238, Exh. D, Affidavit of William Toth, at ¶ 7), there simply is no evidence Toth or OSI attempted to keep this fact concealed from Plaintiff. Further, even if Toth did try to keep this fact from Plaintiff, it would be strange to hold OSI liable for civil conspiracy based on fraudulent concealment when OSI had no duty to disclose the Pentium processors or other known facts to Plaintiff.

Consequently, the Court will **GRANT** OSI's and IPC's motion for summary judgment on Plaintiff's civil conspiracy claim based on fraudulent concealment.

**B.** **Intentional Interference With Contractual Relations and Civil Conspiracy**

**(1)** **Intentional Interference With Contractual Relations**

16

Plaintiff alleges the payments OCI made to Johnston "were intended to interfere with Terry Johnston's employment relationship with Kimball . . . [and] with Kimball's contractual relationship with [Plaintiff]" (Court File No. 235, Fourth Amended Complaint, at ¶¶ 117-18). Therefore, Plaintiff claims OCI, OSI, and Cohen intentionally interfered with contractual relations in violation of Tenn. Code Ann. § 47-50-109.[8]

### (a)     Statute of Limitations

Defendants argue the statute of limitations bars Plaintiff's statutory claim for intentional interference with contractual relations. Johnston left his employment with Kimball in December 2002. Plaintiff did not state a cause of action under § 47-50-109 until November 23, 2005. Defendants argue the appropriate statute of limitations is one year and Plaintiff contends the appropriate statute of limitations is three years. The Court is satisfied the statute of limitations for this claim is three years. *Smith v. Rosenthal Collins Group, LLC*, 340 F. Supp. 2d 860, 863-64 (W.D. Tenn. 2004); *see also Carruthers Ready-Mix, Inc. v. Cement Masons Local Union No. 520*, 779 F.2d 320, 324 (6th Cir. 1985) (applying three-year statute of limitations to a § 47-50-109 claim); *Williams v. Willliamson County Bd. of Educ.*, 890 S.W.2d 788, 790 (Tenn. Ct. App. 1994) (stating "we are not convinced that the one year statute of limitations covers all elements of damages arising from an induced breach of contract."), *other portions superseded by statute*, Tenn. Code Ann. § 50-1-304, *as recognized in Seals v. Jefferson City*, 1999 WL 349690, at *1 (Tenn. Ct. App. Jun. 2, 1999).

---

[8] Plaintiff expressly rests its intentional interference with contractual relations claim on the statutory cause of action (Court File No. 235, Fourth Amended Complaint, at ¶ 120, *see* Court File No. 270, p. 21). However, Plaintiff pleads in the alternative a common law cause of action for intentional interference with contractual relations (Court File No. 235, Fourth Amended Complaint, at p. 24). The Court need not discuss the common law cause of action in this memorandum. The Court's conclusions would be the same even if the common law was the basis of Plaintiff's intentional interference with contract relations claims.

Therefore, Plaintiff's § 47-50-109 claims are clearly not time-barred. However, even if the statute of limitations were one year, Plaintiff's claims would not be barred at this stage of the litigation. The Defendants have presented absolutely no evidence suggesting Plaintiff knew or should have known about the allegedly improper payments before November 23, 2004. In March 2005 Johnston was asked about being compensated by OCI after 1999 and denied receiving any payments from OCI. Further, both parties agree there is a lack of records of the payments made to Johnston. Thus, it is doubtful Plaintiff knew or should have known about OCI's payments to Johnston before November 23, 2004. Accordingly, the Court rejects the Defendants' statute of limitations argument.

### (b) Merits of Intentional Interference With Contractual Relations Claim

Section 47-50-109 is a declaration of the common law tort of intentional interference with contractual relations[9] "except as to the amount of damages that may be recovered against a wrongdoer." *New Life Corp. of Am. v. Thomas Nelson, Inc.*, 932 S.W.2d 921, 926 (Tenn. Ct. App. 1996). When a plaintiff recovers under the statute, treble damages are available in lieu of punitive damages. *Polk & Sullivan, Inc. v. United Cities Gas Co.*, 783 S.W.2d 538, 542 (Tenn. 1989). Section 47-50-109 makes treble damages mandatory. *Id.*; Tenn. Code Ann. § 47-50-109. For a plaintiff to recover these treble damages, there must be a "clear showing" the defendant induced the breach. *Polk & Sullivan*, 783 S.W.2d at 542; *see Buddy Lee Attractions, Inc. v. William Morris Agency, Inc.*, 13 S.W.3d 343, 359-60 (Tenn. Ct. App. 1999) (explaining the burden of proof in

---

[9] In Tennessee, "[b]oth common law and statutory intentional interference with a contract are also referred to as procurement of breach of contract and/or inducement to breach a contract." *JIT Concepts, Inc. v. Shelby County Healthcare Corp.*, 358 F. Supp. 2d 678, 685, n.4 (W.D. Tenn. 2005).

establishing the elements under § 47-50-109 is "clear and convincing").  In order to recover for procurement of a breach of contract the plaintiff must prove (1) there was a legal contract, (2) of which the wrongdoer was aware, (3) that he maliciously intended to induce a breach, (4) and there must have been a breach, (5) proximately caused by his acts, (6) resulting in damages. *Polk & Sullivan,* 783 S.W.2d at 542 ; *Myers v. Pickering Firm, Inc.,* 959 S.W.2d 152, 158 (Tenn. Ct. App. 1997).

### (i)       Johnston's Contract With Kimball

Defendants argue Plaintiff's claim cannot prevail because (1) Plaintiff has no standing to assert a cause of action for tortious interference with the Johnston/Kimball relationship, (2) Johnston did not breach his contract with Kimball, and (3) OCI did not interfere with the Johnston/Kimball contract.

Typically, non-parties to a contract cannot bring an intentional interference with a contract claim. *Willard v. Claborn*, 419 S.W.2d 168, 169 (Tenn. 1967); Steven Feldman, *Tortious Interference With Contract in Tennessee: A Practitioner's Guide*, 31 U. Mem. L. Rev. 281, 289 (2001).  However, if the non-party is an intended third-party beneficiary to the contract at issue, the non-party has standing to bring a tortious interference with contractual relationship claim. *Id.* "Tennessee recognizes two kinds of third-party beneficiaries, intended and incidental.  Only if a party is an intended beneficiary may it maintain an action to enforce the contract." *Davidson & Jones Dev. Co. v. Elmore Dev. Co.*, 921 F.2d 1343, 1356 (6th Cir. 1991).  Therefore, Plaintiff must have been an intended beneficiary of the Kimball/Johnston contract to maintain its action for intentional interference with contractual relations.

For Plaintiff to establish it was an intended beneficiary of the Kimball/Johnston contract,

Plaintiff must establish the clear intent of the contract was to benefit it. *Id.* This clear intent "may be shown if there is either an expression in the contract that the contracting parties intended to benefit the third party . . . or proof that the promisor's performance will otherwise discharge a duty owed to a third party beneficiary by the promisee . . . ." *Id.* (citation and quotation omitted). Johnston had the necessary expertise to consult Plaintiff on the CAD project. That is why Kimball assigned him to consult Plaintiff. Although Plaintiff may have not been an intended beneficiary of the Kimball/Johnston contract when Johnston was first hired, before working on Plaintiff's CAD project, Plaintiff became an intended beneficiary as soon as Johnston was assigned to work with Plaintiff. As such, Plaintiff may bring suit against OCI for intentionally interfering with the Johnston/Kimball contract.

The parties agree Johnston was an at-will employee with Kimball until 2002 (Court File No. 235, Fourth Amended Complaint, at ¶ 100; Court File No. 239, pp. 11-12; Court File No. 241, pp. 5, 20). An at-will employee relationship can give rise to an intentional interference with contract claim. *See, e.g., Corp. of Am. v. Thomas Nelson, Inc.*, 932 S.W.2d 921, 926-27 (Tenn. Ct. App.) (stating "although the contract was terminable at will, an action can still be maintained for procurement of the breach of the contract."). Therefore, there was a legal contract for the purposes of this claim. Further, there is no dispute OCI knew about Johnston's employment contract with Kimball.

As for the breach, when an employee does not give his full allegiance to his employer, there has been a breach of the at-will employment contract. *Dorsett Carpet Mills, Inc. v. Whitt Tile & Marble Distrib. Co.*, 1986 WL 622, at *6 (Tenn. Ct. App. Jan. 2, 1986). Since Johnston was receiving payments from OCI, without Kimball's knowledge, and possibly against the interest of

20

Kimball's client (*i.e.* Plaintiff), a reasonable person could conclude Johnston had a dual allegiance in violation of his contract with Kimball. Thus, Defendants' argument there was no breach of contract must be rejected at this stage of the litigation. Further, since OCI paid Johnston, it was the proximate cause of that breach.

Unlike the evidence presented relating to OCI, there is no evidence OSI paid Johnston while Johnston was employed with Kimball. Therefore, Plaintiff has not met its burden in showing OSI was a proximate cause of the breach of the Johnston/Kimball contract. Accordingly, the Court will **GRANT** OSI's and IPC's motion for summary judgment on Plaintiff's claim against OSI for intentional interference with contractual relations based on the Johnston/Kimball contract.

Next, the Cohen Defendants assert they did not intend to interfere with the Johnston/Kimball contract. The evidence clearly shows OCI made payments to Johnston while Johnston was still employed by Kimball and working on the CAD project for Plaintiff. One of these payments had a notation of "Hamilton County." If OCI was paying Johnston to get an advantage, it is very reasonable to conclude OCI intended Johnston to divide his loyalty. *See Dorsett*, 1986 WL 622 at *6. While Plaintiff may fail at trial to prove by clear and convincing evidence OCI intended to induce a breach of the Johnston/Kimball contract, Plaintiff has presented enough material evidence to let this issue proceed to trial. Finally, as the Court has mentioned before, it is not difficult to conclude that if Johnston were acting in OCI's interest and not in Plaintiff's interest, then Plaintiff suffered damages.

In light of the above, the Court will **DENY** the Cohen Defendants' motion for summary judgment on this ground.

### (ii)    Plaintiff's Contract With Kimball

21

The Cohen Defendants argue Kimball did not breach its contract with Plaintiff, (2) OCI did not intend to interfere with the Kimball/Plaintiff contract, and (3) Plaintiff has not suffered any damages from any alleged breach. Before addressing these arguments, the Court notes the Kimball/Plaintiff contract was a lawful contract of which OCI had knowledge.

With respect to the breach argument, the Court agrees with Plaintiff"[t]he same acts of disloyalty that violated Terry Johnston's contract with Kimball also resulted in a breach of Kimball's obligations to [Plaintiff]" (Court File No. 270, p. 20). Plaintiff hired Kimball expecting Kimball to act in its, and only its, best interests. If Johnston took payments from OCI and acted with OCI's interests in mind, rather than in Plaintiff's interests, the Kimball/Plaintiff contract was breached. Further, if there was a breach, OCI's payments to Johnston proximately caused the breach.

For the same reasons discussed with respect to the Johnston/Kimball contract, the Cohen Defendants' intent argument also fails at this stage of the litigation. Finally, if Johnston acted in OCI's interest when he recommended Plaintiff accept OCI's proposal, negotiated a contract with OCI on behalf of Plaintiff, and recommended OCI be paid ahead of schedule, the Court has no trouble in concluding Plaintiff can easily make a clear showing it suffered damages.

Accordingly, the Court will **DENY** the Cohen Defendants' motion for summary judgment on Plaintiff's tortious interference claim based on the Kimball/Plaintiff contract. However, since, as discussed above, there is a lack of evidence linking OSI's payments to Johnston and the alleged breach, the Court will **GRANT** OSI and IPC's motion for summary judgment on Plaintiff's intentional interference claim based on the Kimball/Plaintiff contract.

### (2)     Civil Conspiracy

Similar to the civil conspiracy claim already discussed in Section **III(A)(2)**, Plaintiff alleges

OCI, OSI, and Cohen conspired to procure a breach of the Johnston/Kimball contract and the Kimball/Plaintiff contract (Court File No. 235, Fourth Amended Complaint, at ¶¶ 120-21). For the same reasons as those in Section **III (A)(2)(a)**, the Court will dismiss Plaintiff's civil conspiracy claim against Cohen. Further, since there is a lack of evidence of OSI's involvement in the pre-2003 payments to Johnston, the Court believes there is insufficient evidence to allow Plaintiff's claim for civil conspiracy against OSI to proceed to trial. Therefore, the Court will **GRANT** OSI's and IPC's motion for summary judgment on Plaintiff's civil conspiracy claim against OSI which is predicated on intentional interference with contractual relations.

As for OCI, the Cohen Defendants offer no additional reasons why this civil conspiracy claim should be dismissed. In fact, the Cohen Defendants only argue they did not attempt to procure a breach of the Johnston/Kimball contract or the Kimball/Plaintiff contract (Court File No. 241, pp. 24-25). Since the Court has already rejected this argument the civil conspiracy claim will proceed to trial. *See Koehler v. Cummings*, 380 F. Supp. 1294, 1312 (M.D. Tenn. 1971) (finding a conspiracy where the defendants paid the plaintiff's employee in breach of the employee's employment contract). In short, a jury may conclude OCI and Johnston had a "common purpose" to induce the breach of the Johnston/Kimball contract and the Kimball/Plaintiff contract. The payment to Johnston with the notation "Hamilton County" is an "overt act" and the damages, as already discussed, are evident. Accordingly, the Court will **DENY** the Cohen Defendants' motion for summary judgment on this ground.

IV. <u>**CONCLUSION**</u>

Having carefully considered the arguments advanced by the parties and the applicable law,

for the reasons stated above, the Court will (1) **GRANT** OSI and IPC's motion for summary judgment (Court File No. 238), (2) **GRANT IN PART** and **DENY IN PART** the Cohen Defendants' motion for summary judgment (Court File No. 240). With respect to OSI's and IPC's motion for summary judgment the Court will **DISMISS** all claims in Counts VI and VII of the Fourth Amended Complaint made against OSI. With respect to the Cohen Defendants' motion for summary judgment, the Court will **DISMISS** all conspiracy claims against Cohen but will allow Plaintiff's remaining claims against OCI and Cohen in Counts VI and VII of the Fourth Amended Complaint to proceed to trial.

An order shall enter.


**/s/**  _____
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**